1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10

11  LAURA LYNN HAMMETT, an                Case No.: 19-CV-605 JLS (AHG)
    individual,
12
                              Plaintiff,  **ORDER (1) GRANTING**
13                                        **DEFENDANTS' MOTIONS TO**
    v.                                    **DISMISS, (2) DENYING MOTION**
14                                        **FOR UNDERTAKING,**
    MARY E. SHERMAN, an individual;       **(3) GRANTING MOTIONS FOR**
15  MARY E. SHERMAN, as manager of        **ATTORNEYS' FEES, (4) DENYING**
    Silver Strand Plaza, LLC; SILVER      **MOTION TO COMPEL CLERK'S**
16  STRAND PLAZA, LLC, a California        **ENTRY OF DEFAULT, AND**
    limited liability company; MARY E.    **(5) DENYING SANCTIONS MOTION**
17  SHERMAN as CO-TRUSTEE OF THE
18  J & M SHERMAN FAMILY TRUST, a         (ECF Nos. 18, 19, 37, 40, 41, 49, 54, 56,
    California revocable trust; JEFFREY M. 60)
19  SHERMAN as CO-TRUSTEE OF THE
20  J & M SHERMAN FAMILY TRUST;
    MARY E. SHERMAN as TRUSTEE OF
21  THE ALEXA SHERMAN
22  IRREVOCABLE TRUST, a California
    irrevocable trust; MARY E. SHERMAN
23  as TRUSTEE OF THE DANA
24  SHERMAN IRREVOCABLE TRUST, a
    California irrevocable trust; MARY E.
25  SHERMAN as TRUSTEE OF THE
26  JENNA SHERMAN IRREVOCABLE
    TRUST, a California irrevocable trust;
27  MARY E. SHERMAN as TRUSTEE OF
28

                                    1

THE BROXTON DENNIS IRREVOCABLE TRUST, a California irrevocable trust; MARY E. SHERMAN as TRUSTEE OF THE CURT DENNIS IRREVOCABLE TRUST, a California irrevocable trust; MARY E. SHERMAN as TRUSTEE OF THE SEAN LYNN IRREVOCABLE TRUST, a California irrevocable trust; MARY E. SHERMAN as TRUSTEE OF THE BRANDEN LYNN IRREVOCABLE TRUST, a California irrevocable trust; LINDA R. KRAMER, an individual; LINDA R. KRAMER as CO-TRUSTEE of the LYNN AND ERIK'S TRUST; ERIK VON PRESSINTIN HUNSAKER as CO-TRUSTEE of the LYNN AND ERIK'S TRUST; DIANE G. DENNIS, an individual; ELLIS ROY STERN, ESQ., an individual; ELLIS ROY STERN, ESQ., an individual; ALAN N. GOLDBERG, ESQ., an individual; STERN & GOLDBERG, a California Partnership; PATRICK C. MCGARRIGLE, ESQ., an individual; MCGARRIGLE, KENNEY & ZAMPIELLO, A PROFESSIONAL LAW CORPORATION, a California corporation; and DOES 1–99,

Defendants.

Presently before the Court are the following, fully-briefed motions: (1) the Motions to Dismiss filed by (a) Defendant Diane G. Dennis ("Dennis Mot.," ECF No. 18); (b) Defendants Linda R. Kramer and Erik Von Pressentin Hunsaker in all capacities ("Kramer Mot.," ECF No. 19); (c) Defendant Silver Strand Plaza, LLC ("SSP") ("SSP Mot.," ECF No. 37); and (d) Defendants Mary E. Sherman and Jeffrey M. Sherman in all capacities (the "Sherman Defendants") ("Sherman Mot.," ECF No. 40); (2) the Sherman Defendants' Motion to Require Plaintiff to Post an Undertaking ("Undertaking Mot.," ECF

2

No. 41); (3) the Motions for Attorneys' Fees ("Fee Motions") filed by (a) Defendants Patrick C. McGarrigle and McGarrigle, Kenney & Zampiello, APC ("MKZ") (together, the "MKZ Defendants") ("MKZ Mot.," ECF No. 49); and (b) Defendants Ellis Stern, Alan N. Golberg, and Stern & Goldberg Attorneys ("S&G") (together, the "S&G Defendants") ("S&G Mot.," ECF No. 54); (4) Plaintiff Laura Lynn Hammett's Motion for Sanctions Pursuant to FRCP 11 Against Attorney Keith Cochran and Fitzgerald Knaier LLP ("Sanctions Mot.," ECF No. 56); and (5) Plaintiff's Motion for the Court to Compel the Clerk of the Court to Enter a Clerk's Default Against Defendant Linda R. Kramer ("Default Mot.," ECF No. 60). The Court took the above-enumerated matters under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 97. Having carefully considered the Parties' arguments and the law, the Court **GRANTS** the Motions to Dismiss, **DENIES** the Undertaking Motion, **GRANTS** the Fee Motions, **DENIES** the Sanctions Motion, and **DENIES** the Default Motion.

## MOTIONS TO DISMISS

## I.    Background[1]

### A.    *The Relevant Actors and Parties*

Following the death of her husband, Dr. Norman H. Kramer, in January 2010, Sandra ("Sandi") Kramer has controlled assets valued at over $12 million, mostly as settlor and trustee of a by-pass trust she had set up with Dr. Kramer.[2] *See* ECF No. 1 ("FAC") ¶ 21. Dr. Norman and Sandi Kramer had set up Defendant SSP in 2005, *see* ECF No. 37-3

---

[1] The facts alleged in Plaintiff's Complaint are accepted as true for purposes of the Motions to Dismiss. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true"). "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Plaintiff attached a lengthy declaration in support of her opposition to the Motions to Dismiss, *see generally* ECF No. 73-2, to which the Sherman Defendants object. Given the limits to materials outside the complaint on which the Court can rely in ruling on Rule 12(b)(6) motions, *see Khoja*, 899 F.3d at 998, the Court disregards Plaintiff's declaration for purposes of the Motions to Dismiss.

[2] While Sandra Kramer is not currently a Defendant in this action, Plaintiff will seek to add her as a Defendant if she continues to make defamatory statements about Plaintiff. *See* FAC ¶ 21.

("OA") Recital A,[3] which is a California limited liability company. FAC ¶ 1. The principal asset of SSP was a multi-tenant shopping center in Imperial Beach, California (the "Property"). *Id.* Defendant SSP is comprised of the following members (the "Members"), representing the children and grandchildren of Dr. Norman and Sandi Kramer,[4] *see generally* OA at A-1–2, FAC ¶ 22:

  1.  Plaintiff, who resides in Faulkner County, Arkansas and owns a 14.1571% interest in SSP, FAC ¶¶ 14, 265;

---

[3] Although Plaintiff did not attach a copy of the Amended and Restated Operating Agreement of Silver Strand Plaza, LLC (the "OA") to either her initial complaint or the operative First Amended Complaint because the only copy she had was stamped "Confidential," SSP filed a Request for Judicial Notice of the OA in support of its Motion, *see* ECF No. 37-2 ("RJN"), and Plaintiff indicated that the OA "will be incorporated into any amended complaint." *See* ECF No. 73-1 at 3.

As indicated above, *see supra* note 1, "[g]enerally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure"; however, "[t]here are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)), *cert. denied*, 139 S. Ct. 2615 (2019). "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute,'" such as matters of public record. *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)). The Ninth Circuit has cautioned, however, that "a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (citing *Lee*, 250 F.3d at 689). Incorporation by reference, on the other hand, "treats certain documents as though they are part of the complaint itself." *Id.* at 1002. "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). "[U]nlike judicial notice, a court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* at 1003 (second alteration in original) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

Although Defendant SSP sought judicial notice of the OA, *see* RJN at 2, the request actually appears to be for incorporation by reference. Defendant SSP makes no argument that the OA is the sort of document of which courts generally take judicial notice, such as public records. *See generally id.* Rather, Defendant SSP primarily depends upon Plaintiff's extensive reliance upon, references to, and quotations from the OA. *See id.* at 3 (citing FAC ¶¶ 1, 3–7, 14, 17, 21–22, 28, 48, 88, 95, 100, 113, 120, 175, 180, 265, 285). Indeed, Plaintiff appears to agree that the OA should be considered part of her First Amended Complaint. *See, e.g.*, ECF No. 73-1 at 3. Because Plaintiff refers extensively to the OA and that it forms the basis for her claims, the Court **GRANTS** Defendant SSP's RJN and **INCORPORATES BY REFERENCE** the OA into Plaintiff's First Amended Complaint.

[4] Another daughter, Roberta Kramer, also owned a 14.1571% interest in SSP, *see* OA at A-1, but she passed away in 2017. *See* FAC ¶¶ 67, 76, 114, 138.

2.      Defendant Mary E. Sherman, who is the Manager of Defendant SSP and, with her husband Defendant Jeffrey M. Sherman, serves as co-trustee of the J & M Sherman Family Trust (the "J&M Trust"), *id.* ¶¶ 2–3, which holds a 14.1571% interest in SSP, *id.* ¶ 3;

3.      Defendant Mary Sherman as trustee of the Jenna Sherman, Alexa Sherman, Dana Sherman, Broxton Dennis, Curt Dennis, Sean Lynn, and Branden Lynn Irrevocable Trusts (together, the "Grandchildren Trusts"), which hold a combined 29.2145% interest in Defendant SSP, *id.* ¶ 4;

4.      Defendant Linda R. Kramer, who holds a 14.1571% interest in SSP, *id.* ¶ 5, which has been assigned to the Lynn and Erik's Trust (the "L&E Trust"), of which Defendant Kramer and her husband, Defendant Erik Von Pressintin Hunsaker, serve as co-trustees, *id.* ¶ 6; and

5.      Defendant Diane G. Dennis, who holds a 14.1571% interest in Defendant SSP. *Id.* ¶ 7.

There exists some animosity between Plaintiff and Defendants, particularly between Plaintiff and her sister, Defendant Mary Sherman, and her mother, Sandi Kramer. *See id.* ¶ 20. Plaintiff's relationship with her mother, which had always been strained, grew particularly bitter after the death of Plaintiff's father, Dr. Norman Kramer, in 2010, *see id.* ¶¶ 30–35, culminating in Sandi Kramer reporting Plaintiff to a government agency for elder abuse. *See id.* ¶¶ 41–42.

Ellis Roy Stern and Alan N. Goldberg are partners of S&G in Los Angeles County, California, who served as counsel to Defendants SSP and Mary Sherman, in her capacity as Manager of SSP, between December 2013 and May 2018. *Id.* ¶¶ 8–10, 36–38. During this period, Mr. Stern also represented Plaintiff's mother, Sandi Kramer. *Id.* ¶¶ 8, 36–38.

Patrick C. McGarrigle is a partner of MKZ in Chatsworth, California, who represented Defendants SSP and Mary Sherman, as Manager of SSP, from May 2018 through present. *Id.* ¶¶ 11–12.

/ / /

### B. Plaintiff's Allegations

Before 2009, Defendant Mary Sherman launched a campaign to cause her parents to cease further financial gifts to Plaintiff's sons. *See* FAC ¶ 22. Although Dr. Norman and Sandi Kramer's family trust gifted SSP to her children in equal 14.1571% shares and to five grandchildren in equal 5.33% interests, Plaintiff's sons each received only a 1.28% interest. *See id.*; *see also* OA at A-1–2.

On January 1, 2009, the members of SSP entered into the OA. FAC ¶ 17; *see also generally* OA. Pursuant to the OA, the Members received regular, monthly distributions from SSP's net operating income ("NOI") according to their ownership interests. *See* FAC ¶¶ 28–29; *see also* OA Art. III. Plaintiff, for example, received over $7,000 per month for her 14.1571% interest. *See* FAC ¶ 29.

Plaintiff had a friendly relationship with two of her sisters, Defendants Kramer and Dennis, until 2013. *See id.* ¶ 27. For example, Defendant Kramer provided capital for certain properties that Plaintiff bought and flipped, splitting the proceeds fifty-fifty. *See id.* But Defendant Mary Sherman began to attempt to alienate Plaintiff from her other sisters as retaliation for certain perceived slanders from Plaintiff. *See id.*

In late 2013, Defendant Mary Sherman emailed the Members that the distributions from SSP's NOI would be discontinued indefinitely. *See id.* ¶ 29. Plaintiff thought Defendant Mary Sherman's decision may have been made in retaliation for Plaintiff expressing unflattering views of her or for Plaintiff's dealings with her mother. *See id.* ¶ 45. If Plaintiff's mother decided to "cut [her] out," the other Members stood to inherit millions of dollars more. *See id.* ¶ 46. Accordingly, the Members generally remained aligned with Sandi Kramer. *See id.*

According to the OA, "[e]ach Member or Manager, as well as Related Persons thereto, may receive reasonable compensation or fees for services rendered to the Company, but only if and to the extent that the Manager approves the amount and payment terms for such compensation or fees, including any adjustments in the amount of such compensation or fees from time to time." OA Art. VI, ¶ 6.1. In October 2013, the

management fees were 5.7% of gross receipts, *see* FAC ¶ 47, but this jumped to over 11% following Plaintiff's clash with her mother. *See id.*

As the Manager of SSP, Defendant Mary Sherman was also required to hire an accountant to prepare statements reflecting the financial condition of SSP, including its net profit or net loss, and to give copies to all Members. *See* OA Art. IV, ¶ 4.2. In 2012, Defendant Mary Sherman ceased sending the required monthly financial statements as she previously had done, even after Plaintiff requested that she resume the practice. *See* FAC ¶¶ 47, 95–96.

The OA also provides that "[a]ll Company books of account, together with executed copies of the Articles of Organization, this Agreement, and any amendments to such documents, shall be kept at the Company's principal office, and shall be available during reasonable business hours for inspection and examination by the Members or their representatives, who shall have the right to make copies of any such books and documents at their own expense." OA Art. IV, ¶ 4.1. In January 2014, Plaintiff insisted on inspecting and copying SSP documents pursuant to this provision. *See* FAC ¶ 48. Although Mr. Stern offered Plaintiff thousands of pages of documents in his office, *see id.* ¶ 94, they were based on Defendant Mary Sherman's data input and did not include source documents. *See id.* ¶ 49. Plaintiff was concerned by certain perceived discrepancies. *See id.*

For example, it appeared to Plaintiff as though Defendant Mary Sherman had loaned SSP funds to the J&M Trust. *See id.* ¶¶ 50, 211. SSP funds were also used to pay for the lease of an Audi used exclusively by Sandi Kramer, who no longer had an ownership interest in SSP. *See id.* ¶¶ 52, 269.

Since January 2014, all other Members of SSP have refused to ask for an accounting and have blocked Plaintiff from filing a lawsuit on SSP's behalf. *See* FAC ¶¶ 18, 234–35. On February 10, 2014, for example, a telephonic conference was held at Plaintiff's request to vote on whether to have an accounting and whether to allow Plaintiff to sell her interest in SSP to the other Members. *See id.* ¶ 54. All Defendant Members voted against an accounting, and only Defendant Kramer voted to consider a purchase of Plaintiff's interest

in SSP, although it was decided that the issue could be reconsidered if Plaintiff were to give a definite offer price. *See id.* ¶ 55. Plaintiff took issue with Mr. Stern's minutes from that meeting, *see id.* ¶ 56, and Mr. Stern counseled Plaintiff against taking legal action, as she had threatened. *See id.* ¶ 57. In the following months, Plaintiff's mother and Defendant Kramer sent emails containing disparaging comments about Plaintiff. *See id.* ¶¶ 59–60.

On January 1, 2015, on her therapist's advice, *see id.* ¶ 63, Plaintiff moved to Arkansas. *See id.* ¶ 61. Although Plaintiff informed Defendant Mary Sherman about her move, *see id.* ¶ 62, she kept her address private, *see id.* ¶ 61, and therefore had her mail sent to a Post Office box in California and forwarded to her new home in Arkansas. *See id.* ¶ 62. At that time, Plaintiff also requested that Defendant Mary Sherman send any distributions to Plaintiff's younger son, who served as trustee of Plaintiff's revocable living trust. *See id.* ¶ 64. Plaintiff sent a copy of the trust to Defendant Mary Sherman, as she had requested. *See id.*

In June 2015, Plaintiff offered to sell her share of SSP to the other Members for its tax basis of $516,839. *See id.* ¶ 66. Because of Plaintiff's litigation threats, Defendant Mary Sherman emailed Defendants Kramer and Dennis to refrain from replying to Plaintiff's emails and to allow counsel for herself as Manager and for SSP to respond. *See id.* ¶¶ 67–68. The Members paid Mr. Stern to represent them using SSP's money. *See id.* ¶¶ 18, 271–72. On June 15, 2015, Mr. Stern offered Plaintiff $218,000 for her share of SSP, *see id.* ¶¶ 18, 70, 209, 225, 272, an offer which Plaintiff rejected. *See id.* ¶ 71.

On June 18, 2015, Plaintiff requested that Defendant Mary Sherman share with the Members the total value of checks and cash issued to Defendant Mary Sherman. *See id.* ¶ 74. Defendant Mary Sherman sent a Statement of Operations dated April 30, 2015, and a page from a Strategic Asset Management Group Monthly General Ledger. *See id.* ¶ 75.

In December 2015, Defendant Mary Sherman informed the Members that they each would receive distributions of $75,000 that month, without any explanation for why the distribution exceeded the regular annual distribution. *See id.* ¶ 77.

/ / /

On May 13, 2016, Defendant Mary Sherman emailed the Members to ask whether they should sell the Property. *See id.* ¶ 78. She estimated that the sale price would be around $9 million. *See id.* The email was followed by a conference call. *See id.* ¶ 79. Based on the NOI that Defendant Mary Sherman had reported, the Members agreed to accept an offer of $7.9 million or more, which would result in Plaintiff receiving $1.1 million. *See id.* ¶ 80.

Once the Property was listed for sale in August 2016, Plaintiff noticed a discrepancy in between the income, expenses, and NOI. *See id.* ¶¶ 82–85, 209. Plaintiff and her attorney sought clarification from Defendant Mary Sherman and Mr. Stern, although they were not satisfied with the responses. *See id.* ¶¶ 86–88, 209.

In October 2016, the Property went into escrow for approximately $10.2 million. *See id.* ¶¶ 81, 182. On December 20, 2016, Defendant Mary Sherman informed the Members that the sale was set to close on January 10, 2017. *See id.* ¶¶ 81, 101. Plaintiff therefore emailed wire instructions to Defendant Mary Sherman on January 1, 2017. *See id.* ¶ 102. After the sale closed on January 26, 2017, Defendant Mary Sherman delayed disbursement of funds to Plaintiff. *See id.* ¶¶ 103, 204. On January 31, 2017, despite acknowledging receipt of Plaintiff's wire instructions on January 1, 2017, *see id.* ¶ 102, Defendant Mary Sherman denied having received Plaintiff's wire instructions. *See id.* ¶¶ 102, 104. Defendant Mary Sherman also informed Plaintiff for the first time that California had denied Plaintiff a waiver from the requirement that Defendant SSP withhold 7% of the distribution to Plaintiff as a non-California resident based on the Franchise Tax Board's ("FTB") mistaken belief that Plaintiff had not filed her tax returns and owed back taxes. *See id.* ¶ 105. On February 2, 2017, Defendant Mary Sherman also informed Plaintiff that she was required to withhold the amount of a Child Support Division lien against other of Plaintiff's properties unrelated to SSP. *See id.* ¶ 109.

Ultimately, on February 6, 2017, Defendant Mary Sherman withheld 7% of Plaintiff's distribution, rather than 7% of the amount in excess of her tax basis, *see id.* ¶ 106, and $50,000 for a "litigation fund" in case Plaintiff filed suit to obtain her

distribution. *See id.* ¶¶ 17, 110, 204. Although Defendant Mary Sherman attempted to obtain a release of any claims for breach of fiduciary duty in exchange for the $50,000, *see id.* ¶¶ 110–11, 204, she did not succeed and released the $50,000 to Plaintiff on February 10, 2017. *See id.* ¶¶ 17, 111. Defendant Mary Sherman still withheld $148,000 in an SSP account as a litigation fund. *See id.* ¶ 111.

As for the amount withheld for taxes, Plaintiff had to wait nearly a year to file a return and her filing then went to the audit department. *See id.* ¶ 106. Eventually, Plaintiff received a refund of over $100,000 for the amount withheld for taxes. *See id.* The FTB also issued 1.5% interest to Plaintiff, which was far less than the capitalization rate earned on SSP at either of the two NOIs reported by Defendant Mary Sherman. *See id.* ¶ 107.

Following the sale of the Property, Defendant Mary Sherman gave herself bonuses of $65,000 and purchased computers costing $2,300 and $876 with SSP funds, without informing the other Members or obtaining their authorization. *See id.* ¶¶ 17, 98, 266, 268, 270. Defendant Mary Sherman also failed to report the $65,000 in bonuses to the IRS, which could increase the tax burden on SSP's Members. *See id.* ¶¶ 17, 97, 266–67, 270. She also continued to pay herself a $1,500 monthly salary. *See id.* ¶¶ 111, 204.

When Plaintiff finally received a copy of the pro forma financials given to potential buyers of the Property in July 2018, she learned that, in violation of the OA, Defendant Mary Sherman had caused Defendant SSP to pay herself and a third-party management company a 10.3% management fee, which was more than double the 5% Defendant Mary Sherman had told potential buyers was a reasonable management fee. *See* FAC ¶¶ 17, 91, 204. When office administration and the leasing commission were added to the management costs, they totaled 11.39% of SSP's gross income. *See id.* ¶ 91. Defendant Mary Sherman explained that the high salary and bonuses were the result of her selling the Property for a higher price than anticipated. *See id.* ¶ 92. The offering memorandum also indicated that the rents were lower than the market rate. *See id.* Defendant Mary Sherman also caused unexplained "Asset Account Adjustments" of $390,677.55. *See* FAC ¶¶ 17, 295, 304, 307.

In May 2018, Plaintiff filed a lawsuit in the United States District Court for the Central District of California, *Lynn v. Sherman* (the "Prior Action"), No. 2:18-cv-03757-FMO-JPR (C.D. Cal. Filed May 7, 2018).[5]  *See* FAC ¶ 93.  Mr. McGarrigle began representing Defendants SSP and Mary Sherman, as Manager of SSP, in the Prior Action. *See id.*  On May 18, 2018, Plaintiff voluntarily withdrew the complaint without prejudice to attempt to resolve the issues without pursuing litigation.  *See id.*

Plaintiff has attempted to gain additional documents from SSP, but Mr. McGarrigle has insisted that Plaintiff sign a confidentiality agreement.  *See id.* ¶¶ 97, 116.  When Mr. McGarrigle finally produced some documents to Plaintiff, they were incomplete.  *See id.* ¶ 97.

On January 19, 2019, Plaintiff requested a vote to take back the $65,000 bonus that Defendant Mary Sherman had paid to herself and for actual bank records, *see id.* ¶ 122, to no avail.  *See id.* ¶ 123.  Plaintiff circulated a draft complaint to Mr. McGarrigle and Defendants in early March 2019.  *See id.* ¶ 124.  Although Mr. McGarrigle provided some of the documentation Plaintiff had requested, he did not provide any source documents, *see id.* ¶ 126, and certain requested documents were still missing.  *See id.* ¶ 127.

Defendants Mary Sherman, Dennis, and Kramer, acting with Sandi Kramer, also have defamed Plaintiff to intimidate her from pursuing her legal rights.  *See* FAC ¶¶ 19, 258–59.  For example, in March 2019, Plaintiff became aware of a libelous email that Defendant Mary Sherman had written to her sisters, probably on February 2, 2017.  *See id.* ¶ 134; *see also id.* ¶ 17.  The email accused Plaintiff of "choos[ing] to break the law over and over and over (as evidenced by being fired from the County, having a $250K judgment imposed against her by CSSD, and not paying CA taxes since 2011)."  *See id.* ¶¶ 134, 251. All of these statements were false.  *See id.* ¶¶ 135–37.

/ / /

---

[5] The Court may take judicial notice *sua sponte* of matters of public record, *see Khoja*, 899 F.3d at 999, including related litigation.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

In December 2018, Defendant Dennis also sent messages through Facebook to random people in a community group in which Plaintiff was involved in the small community of Witts Spring, Arkansas. *See id.* ¶ 151. Plaintiff had business transactions with some of the recipients of Defendant Dennis' messages and went to church with most of them. *See id.* Defendant Dennis referred to Plaintiff's house as a "compound," *see id.* ¶ 152, and indicated that Plaintiff had a "'porn' business." *See id.* ¶¶ 153, 243. Although Plaintiff moved away from Witts Spring in February 2018, she has kept her property there and, when she attended a church service in Witts Spring in January 2019, several community members asked Plaintiff about the messages. *See id.* ¶ 155. Although "the community members always treated Plaintiff as if she was of fine character, . . . it is difficult to know how th[ese comments] will affect Plaintiff's reputation in the community." *Id.*

Defendant Dennis repeated her libelous comments to the other Defendants and Mr. McGarrigle by email in March 2019. *See id.* ¶¶ 156, 244–45. For example, one email dated March 12, 2019 asked, "How is your alleged illegal porn business going?" *See id.* Another noted, "Child pornography is illegal. Criminals eventually get caught." *See id.*; *see also id.* ¶ 163.

The Members have paid Mr. Stern and Mr. McGarrigle to represent them in this action, which should not be allowed under the OA, *see id.* ¶¶ 18, 271–72, 278, which requires SSP to indemnify "any Member or Manager who was or is a party to any threatened, pending, or completed action, suit or proceeding . . . , including a proceeding brought on behalf of the Members of the Company, because such person is or was a Member or Manager of the Company, . . . *unless such person has engaged in willful misconduct or a knowing violation of the criminal law*." *See id.* ¶ 175 (emphasis added) (quoting OA Art. IX, ¶ 9.1(a)). Plaintiff, however, was not indemnified, *see id.* ¶¶ 176–78, even though the OA provides that SSP "shall promptly make advances or reimbursements for reasonable expenses (including attorneys' fees) incurred by any person claiming indemnification . . . , unless it has been determined that such Person is not entitled

to indemnification." *See id.* ¶ 175 (quoting OA Art. IX, ¶ 9.1(b)). If a Member is seeking indemnification, the determination of indemnification and the reasonableness of fees is made by the Manager. *See id.* (quoting OA Art. IX, ¶ 9.1(c)). If the Manager is seeking indemnification, those determinations are instead made by a majority of Members or outside counsel. *See id.* (quoting OA Art. IX, ¶ 9.1(c)).

### C. *Procedural Background*

On April 2, 2019, Plaintiff filed her Complaint for Breach of Fiduciary Duty, Aiding and Abetting a Breach of Fiduciary Duty, Defamation per se, Conversion, and Exemplary Damages; Equitable Relief of an Accounting and Specific Performance of Indemnification Clause of Operating Agreement. *See generally* ECF No. 1. The original complaint named Defendant Mary Sherman, individually, as Manager of SSP, and as co-trustee of the J&M and Grandchildren Trusts; SSP; Defendant Kramer, individually; and Defendant Dennis, individually. *See generally id.*

On May 29, 2019, Plaintiff filed the operative First Amended Complaint, adding a derivative claim of legal malpractice and requesting disqualification of counsel to SSP and a receivership. *See generally* FAC. Plaintiff also added as Defendants Jeffrey Sherman as co-trustee of the J&M Trust, Defendants Kramer and Hunsaker as co-trustees of the L&E Trust, the S&G Defendants, and the MKZ Defendants. *See generally id.*

Defendant Dennis filed the Dennis Motion on July 29, 2019, *see* ECF No. 18; the Kramer Defendants filed the Kramer Motion on July 30, 2019, *see* ECF No. 19; Defendant SSP filed the SSP Motion on August 14, 2019, *see* ECF No. 37; and the Sherman Defendants filed the Sherman Motion on August 29, 2019. *See* ECF No. 40.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the

pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Claims that allege fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen*

14

*v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct).

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## III.   Analysis

### A.   *The Dennis Motion*

Defendant Dennis seeks dismissal with prejudice of all causes of action alleged against her in Plaintiff's First Amended Complaint: (1) the second cause of action for aiding and abetting breach of fiduciary duty, (2) the third cause of action for defamation per se, (3) the fourth cause of action for civil conspiracy to defame, and (4) the fifth cause of action for conversion.[6]  *See* ECF No. 18 at 2; *see also* ECF No. 89 at 8.

#### *1.   Second Cause of Action: Aiding and Abetting Breach of Fiduciary Duty*

In her second cause of action, Plaintiff alleges that Defendant Dennis aided and abetted Defendant Mary Sherman's breach of her fiduciary duties to Plaintiff by turning a blind eye to her misappropriation of SSP funds, failing to vote for an accounting, denying indemnification to Plaintiff, and stalling the disclosure of business records.  *See* FAC ¶¶ 228, 230–31, 233–34.

"To state a claim for aiding and abetting breach of fiduciary duty under California law, a plaintiff must allege that the defendant: (1) had actual knowledge of the specific primary wrong being committed by the fiduciary; and (2) provided substantial assistance to the fiduciary to accomplish the specific breach of fiduciary duty." *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 361 (N.D. Cal. 2015) (citing *In re First Alliance Mortg. Co.*, 471

---

[6] The Sherman Defendants join in the Dennis Motion.  *See* ECF No. 42.

F.3d 977, 993–95 (9th Cir. 2006); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003); *Casey v. U.S. Bank Nat'l Ass'n,* 127 Cal. App. 4th 1138, 1145–46 (2005)). "California law requires that a defendant have actual knowledge of tortious activity before it can be held liable as an aider and abettor, and federal courts have found that the phrase 'knew or should have known' does not plead actual knowledge." *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1206 (C.D. Cal. 2006) (quoting *Neilson*, 290 F. Supp. 2d at 1118–19).

Defendant Dennis contends that Plaintiff's second cause of action for aiding and abetting breach of fiduciary duty must be dismissed because Plaintiff has failed to allege that Defendant Dennis (1) had actual knowledge of the underlying breach, (2) substantially assisted or encouraged Defendant Mary Sherman in perpetrating the underlying breach, or (3) caused harm to Plaintiff through her assistance. *See* ECF No. 18-1 at 3–4 (citing *Krause v. Musgrave*, No. 15-CV-02280-LHK, 2015 U.S. Dist. LEXIS 152686, at *42 (N.D. Cal. Nov. 10, 2015); *Casey*, 127 Cal. App. 4th at 1145–47). Plaintiff responds that Defendant "Dennis acknowledged knowing Sherman had taken over $65,000," *see* ECF No. 73 at 14 (citing FAC ¶ 166), and by distinguishing *Casey*. *See id.* Defendant Dennis responds that Plaintiff's declaration, in which Plaintiff admits that "Dennis did not know at the time the $65,000 was taken," is consistent with the allegations in Plaintiff's First Amended Complaint that "Defendant Sherman took the $65,000 'in 2017 without asking or even informing the other members.'" *See* ECF No. 89 at 3 (quoting FAC ¶ 98; ECF No. 73-2 ¶ 28).

The Court agrees that Plaintiff has failed adequately to allege Defendant Dennis' actual knowledge of the alleged underlying breach by Defendant Mary Sherman. Plaintiff alleges that Defendant Dennis "w[as] aware of the misappropriation" because she is an "extremely intelligent, well[-]educated wom[a]n, . . . who ha[s] experience dealing in real estate" and, consequently, "[i]f [she is] not aware of the extent of misappropriation of funds by Defendant Sherman, it is due to [her] own inaction." FAC ¶ 230. These allegations

/ / /

amount to the type of "knew or should have known" allegations that federal courts have found insufficient to plead actual knowledge. *See, e.g.*, *Gonzales*, 532 F. Supp. 2d at 1206.

Paragraph 166 of Plaintiff's First Amended Complaint does not alter the Court's conclusion. In paragraph 166, Plaintiff alleges that, in March 2019, Defendant Dennis expressed to Plaintiff that she was "sure [the amount taken by Defendant Mary Sherman] was more than [$]65,000." *See* FAC ¶ 166. But Defendant Dennis' knowledge of the alleged conversion and breach of fiduciary duty in March 2019 does not support Defendant Dennis' knowledge of the breach when it occurred in 2017, *see id.* ¶¶ 17, 98, 266, 268, 270, which, as Defendant Dennis notes, was allegedly done "without asking or even informing the other members." *See* ECF No. 89 at 3 (quoting FAC ¶ 98).

Because Plaintiff has failed to allege that Defendant Dennis had actual knowledge of the alleged underlying breach of fiduciary duty, the Court **GRANTS** the Dennis Motion and **DISMISSES** Plaintiff's second cause of action for aiding and abetting breach of fiduciary duty as to Defendant Dennis.

### 2. *Third Cause of Action: Defamation Per Se*

In her third cause of action, Plaintiff alleges defamation per se against Defendant Dennis. *See* FAC ¶¶ 242–56. Defendant Dennis contends that the Court should apply Arkansas law, *see* ECF No. 18-1 at 8–10, which "abolished the doctrine of presumed damages by disallowing defamation per se cases." *Id.* at 11 (citing *United Ins. Co. of Am. v. Murphy*, 331 Ark. 364, 370 (1998)). Consequently, Defendant Dennis argues, Plaintiff's claim must be dismissed because "Plaintiff has not alleged and cannot plead actual injury." *Id.*

#### a. Choice of Law

In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987). California applies a three-step "governmental interest" analysis to choice-of-law questions:

/ / /

First, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction. Second, if the laws do differ, the court must determine whether a "true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied. "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." On the other hand, if more than one jurisdiction has a legitimate interest, "the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of the state whose interest would be the more impaired if its law were not applied.

*Abogados v. AT&T Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (internal citations omitted).

Both Defendant Dennis and Plaintiff agree that Arkansas law differs from California law with regard to defamation, in that California permits actions for defamation per se, *see Crowe v. City of San Diego*, 608 F.3d 406, 442 (9th Cir. 2010), while Arkansas does not. *See Murphy*, 331 Ark. at 370; *see also* ECF No. 18-1 at 9; ECF No. 73-1 at 15; ECF No. 89 at 4.[7] The Court therefore examines whether a "true conflict" exists between California and Arkansas defamation law and, if so, which state's interest would be more impaired by failure to apply its law.

/ / /

---

[7] To the extent Plaintiff contends that *Murphy* is not good law, *see* ECF No. 73-1 at 17–18, she is mistaken. To the extent Plaintiff challenges the constitutionality of the Arkansas Supreme Court's interpretation of Arkansas law, *see id.* at 15, not only is Plaintiff's argument insufficiently developed for the Court to evaluate, *see, e.g.*, *Garcia v. GMAC Mortg., LLC*, No. CV-09-0891-PHX-GMS, 2009 WL 2782791, at *1 (D. Ariz. Aug. 31, 2009) ("If an argument is not properly argued and explained, the argument is waived.") (collecting authorities), but the Court lacks jurisdiction over Plaintiff's challenge. *See, e.g.*, *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838, 98 S. Ct. 1535, 1541 n.9 (1978) ("[I]t is not our function to construe a state statute contrary to the construction given it by the highest court of a State.") (quoting *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974)); *see also Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011) ("The highest court of each State, of course, remains 'the final arbiter of what is state law.'") (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940)); *Weinberg v. United States*, 126 F.2d 1004, 1006 (2d Cir. 1942) ("With very few exceptions, United States district judges possess no extraterritorial jurisdiction.") (collecting cases).

Defendant Dennis contends that "California has little to no interest in a defamation claim between two non-residents." *See* ECF No. 18-1 at 9 (citing *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989)). Further, "even if California were to have any legitimate interest, Arkansas's interests would be 'more impaired' if its law was not applied" because "Arkansas has greater defamation contacts" and "Arkansas maintains that defamation per se 'creates unjustifiable inequities for plaintiffs and defendants alike,'" meaning that "Arkansas would be unable to protect its own resident from a law it believes to be unjustifiably inequitable" if the Court were to apply California law. *See id.* at 10 (quoting *Murphy*, 331 Ark. at 370) (citing *Shorter v. Peaches Unif., Inc.*, No. 2:10-cv-02232-MCE-GGH, 2012 WL 3882322, at *5 (E.D. Cal. Sep. 5, 2012)).

Plaintiff responds that California law should apply because "the primary damages were in California, with only nominal damages in Arkansas." ECF No. 73-1 at 15 (citing FAC ¶ 155). In any event, "[t]he bulk of the defamatory comments by Dennis were written from Colorado or New Mexico," *see id.*, and "the bulk of the[] defamatory statements were published to recipients in California," *see id.* at 16, and "[t]he governing law is that of the place where the wrong was committed," *i.e.*, "where the defamatory statement is communicated and not necessarily in the place from which is originates." *See id.* at 15–16 (citing *Hartmann v. Time, Inc.*, 166 F.2d 127, 133–35 (3d Cir. 1947), *cert. denied*, 334 U.S. 838 (1948); *Nagoya Assocs. v. Esquire, Inc.*, 191 F. Supp. 379, 382 (S.D.N.Y. 1961); *Dale Sys. v. Gen. Teleradio*, 105 F. Supp. 745, 747–49 (S.D.N.Y. 1952); *Howser v. Pearson*, 95 F. Supp. 936, 938 (D.D.C. 1951)). Further, "it is California's interests that will be 'more impaired[,'] because the damages are inherently entwined with the business in California, except as to those comments made to Arkansas recipients." *Id.* at 16.

Defendant Dennis responds that, "[f]or claims of defamation, choice of law principals 'would call for application of the law of the plaintiff's domicile'" because, "'[o]rdinarily, it is there, if anywhere, that the plaintiff can be said to enjoy a reputation; and there, if anywhere, that reputation would suffer injury by the accused writing.'" ECF No. 89 at 4 (quoting *Hanley v. Tribune Publ'g Co.*, 527 F.3d 68, 70 (9th Cir. 1975)).

Further, Plaintiff's prior residence in California "does not confer interest in a choice of law analysis," *id.* (citing *McGhee*, 871 F.2d at 1423), and "Plaintiff's membership interest in a California company is not material" because "[t]he alleged defamation pertained neither to SSP nor Plaintiff's interest in SSP." *Id.* (citing *McGhee*, 871 F.2d at 1424).

The Parties did not identify, and the Court has not found, any cases addressing choice of law between California and Arkansas as to defamation claims; nonetheless, based on the authorities available to it, the Court concludes that Arkansas law applies to Plaintiff's defamation claims against Defendant Dennis. As for the statements Defendant Dennis made to residents of Witts Springs, Arkansas, in December 2018, *see* FAC ¶¶ 151–155, 243, there is no "true conflict" because California has no legitimate interest in the application of its law to statements made by a non-California resident to non-California residents about a non-California resident. *See McGhee*, 871 F.2d at 1425 ("California, despite its interest in securing recovery for its residents, will not apply its law to conduct in other jurisdictions resulting in injury in those jurisdictions."). Consequently, the Court will apply Arkansas law to Plaintiff's defamation claims against Defendant Dennis arising from statements made to residents of Arkansas.

Regarding the statements Defendant Dennis made to Defendants Mary Sherman and Kramer and Mr. McGarrigle in March 2019, the issue presented is closer, but the Court ultimately concludes that Arkansas law applies to these claims as well. As with the December 2018 statements, the March 2019 statements were also made by a non-California resident about a non-California resident. *See* FAC ¶¶ 156–57, 245; *see also id.* ¶¶ 7, 14. The fundamental distinction is that the statements were made to residents of California. *See also id.* ¶¶ 2, 5, 11. Assuming that this suffices to create a "true conflict," the Court concludes that Arkansas' interests would be more impaired than California's if its law were not applied. In abolishing defamation per se, the Arkansas Supreme Court noted that "[a] number of evils flow from the anomaly of presumed damages," *Murphy*, 331 Ark. at 370 (quoting David A. Anderson, *Reputation, Compensation, and Proof*, 25 Wm. & Mary L. Rev. 747, 749 (1984)), including "the absence of criteria given to juries to measure the

amount the injured party ought to recover, the danger of juries considering impermissible factors such as the defendant's wealth or unpopularity, and the lack of control on the part of trial judges over the size of jury verdicts." *Id.* (citing Anderson, *supra*, at 749–52). "Moreover, by allowing presumed damages for certain words that fit within the *per se* categories but precluding actual damages for other words without additional proof of damages, the common-law rule 'creates unjustifiable inequities for plaintiffs and defendants alike.'" *Id.* (quoting *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 313 (Mo. banc 1993)). To the extent California has any interest in allegedly defamatory statements made to its residents, Arkansas' interest in avoiding "unjustifiable inequities" for its own residents—including Plaintiff—would be more impaired if its law were not applied here. Accordingly, the Court concludes that Arkansas law applies to all of Plaintiff's defamation claims against Defendant Dennis.

b.     Sufficiency of Plaintiff's Allegations

"[T]he elements of a defamation claim in Arkansas are: (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages." *Gibson v. Regions Fin. Corp.*, No. 4:05CV01922 JLH, 2008 WL 110917, at *5 (E.D. Ark. Jan. 9, 2008) (quoting *Northport Health Servs., Inc. v. Owens*, 356 Ark. 630, 641 (2004) (internal quotation marks omitted), *aff'd in part*, 557 F.3d 842 (8th Cir. 2009). Defendant contends that "Plaintiff's defamation per se argument fails under Arkansas law" because "there is no actual injury beyond speculation." *See* ECF No. 18-1 at 11. Plaintiff responds that the showing of actual damage to reputation required under Arkansas law is "slight" and that "[t]he communications as ple[]d would certainly cause harm to Plaintiff's reputation." *See* ECF No. 73-1 at 21 (quoting *Ellis v. Price*, 337 Ark. 542, 549–50 (1999)).

Here, Plaintiff alleges that Defendant Dennis' allegedly defamatory statements "tended to injure Plaintiff in her business and charity work with the readers and to expose her to hatred, contempt, ridicule, or shame and to discourage others from associating or

dealing with her." FAC ¶ 247. As for the statements made to residents of Witts Spring, Plaintiff adds that, "[e]ven though the community members always treated Plaintiff as if she was of fine character, these kinds of comments are libelous on their face, and it is difficult to know how they will affect Plaintiff's reputation in the community." *Id.* ¶ 155. Regarding the statements made to Defendants Sherman and Kramer and Mr. McGarrigle, "while [Mr.] McGarrigle admonished Plaintiff several times for writing inappropriate, but unspecified comments, in emails he sent to Defendants Sherman, L. Kramer and Dennis, he never told Defendant Dennis her comments were inappropriate in an email copied to Plaintiff." *Id.* ¶ 160.

To the extent Defendant Dennis' communications with her sisters and their attorneys were not privileged, *see, e.g.*, *Redman & Assocs., LLC v. Sales Chief Ent. (Hong Kong) Co.*, No. 5:14-CV-5277, 2015 WL 6453534, at *2 (W.D. Ark. Oct. 23, 2015) (quoting Restatement (Second) of Torts § 587), Plaintiff "has not pled specific facts demonstrating that she has suffered actual damage to her reputation, but has only pled a conclusion to that effect," which "is not enough to withstand a . . . motion" to dismiss. *See Faulkner*, 347 Ark. at 957 (citing *Grine v. Bd. of Trs.*, 338 Ark. 791, 799–800 (1999)). Plaintiff fails to allege that Defendant Dennis' statements to the members of Witts Spring caused any harm to Plaintiff's reputation; rather, she alleges that they "always treated Plaintiff as if she was of fine character" and that "it is difficult to know how the[ statements] will affect Plaintiff's reputation in the community." *See* FAC ¶ 155. As for the statements to Defendants Sherman and Kramer and Mr. McGarrigle, it is unclear what further damage Plaintiff's reputation has suffered. Plaintiff herself concedes that "there is animosity between Plaintiff and both Defendant Sherman and Sandi Kramer that goes back decades," *see id.* ¶ 20, and it seems that Plaintiff's relationship with Defendant Kramer was also strained at times before the statements at issue were made. *See, e.g., id.* ¶ 60. Mr. McGarrigle became counsel to Defendants SSP and Mary Sherman—adverse to Plaintiff—in May 2018. *See, e.g., id.* ¶¶ 93. There are no allegations that Defendant Dennis' statements were circulated beyond this group; accordingly, Plaintiff has failed to plead any damage to her reputation

as a result of Defendant Dennis' allegedly defamatory statements to Defendants Mary Sherman and Kramer and Mr. McGarrigle.

Because Plaintiff has failed adequately to allege any actual damage to her reputation—either among the residents of Witts Spring or among Defendants Mary Sherman and Kramer and Mr. McGarrigle—the Court **GRANTS** the Dennis Motion and **DISMISSES** Plaintiff's third cause of action for defamation as to Defendant Dennis.

### 3. Fourth Cause of Action: Civil Conspiracy to Defame

In her fourth cause of action, Plaintiff alleges that Defendant Dennis "joined with non-named Sandi Kramer and Ellis Stern to defame Plaintiff per se." *See* FAC ¶ 258. "To prove a civil conspiracy, a plaintiff must show that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral means, to the injury of another." *Faulkner*, 347 Ark. at 961. This requires the plaintiff to plead "all of the essential elements . . . on the underlying claim of [defamation]." Ark. Model Jury Instr., Civil AMI 714. Because the Court concludes that Plaintiff has failed to state a claim for defamation, *see supra* Section III.A.2, the Court **GRANTS** the Dennis Motion and **DISMISSES** Plaintiff's fourth cause of action for civil conspiracy to defame as to Defendant Dennis.

### 4. Fifth Cause of Action: Conversion

Finally, Plaintiff brings a fifth cause of action against Defendant Dennis for conversion. *See* FAC ¶¶ 264–83. Defendant Dennis contends that "Plaintiff's conversion claim fails because the FAC alleges no facts tying Dennis to the alleged conversion . . . and also because a claim of conversion of money damages requires a specific sum to be received by the defendant." *See* ECF No. 18-1 at 12 (citing FAC ¶¶ 264–83). Plaintiff responds that "[w]hen any . . . Defendant took legal services paid for by SSP for her own personal pecuniary interests she knew that 14.157% of the money paid to Counsel on her behalf belonged to Plaintiff." *See* ECF No. 73-1 at 12. On reply, Defendant Dennis asserts that Plaintiff concedes that she has alleged no facts tying Defendant Dennis to the alleged

conversion and adds that "the FAC does not plausibly plead Plaintiff owns the converted property" because Plaintiff's suit is really a derivative action on behalf of SSP. *See* ECF No. 89 at 7 (citing *Walsh v. Nev. Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006)).

"In California, conversion has three elements: ownership or right to possession of property, wrongful disposition of the property right[,] and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992) (citing *Tyrone Pac. Int'l, Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981)). "To establish a conversion, plaintiff must establish an actual interference with his *ownership* or *right of possession*. . . . Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion." *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990) (alterations and emphasis in original) (quoting *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593, 610–11 (1981)) (citing *Gen. Motors Acceptance Corp. v. Dallas*, 198 Cal. 365, 370 (1926)). Additionally, "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved[.]" *Sims v. AT & T Mobility Servs. LLC*, 955 F. Supp. 2d 1110, 1118 (E.D. Cal. 2013) (alteration in original) (quoting *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007)). But "a plaintiff is not required to plead the exact amount of money allegedly converted by the defendant . . . . Instead, the plaintiff need only allege conversion of a sum that is capable of identification . . . to survive the pleading stage." *Brock v. Concord Auto. Dealership LLC*, No. 14-CV-01889-HSG, 2016 WL 829074, at *4 (N.D. Cal. Mar. 3, 2016) (quoting *Brock v. Concord Auto. Dealership LLC*, No. 14-CV-01889-HSG, 2015 WL 3466543, at *6 (N.D. Cal. June 1, 2015) (quoting *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1023 (E.D. Cal. 2010))) (internal quotation marks omitted).

The allegations in Plaintiff's First Amended Complaint fail to plead conversion as to Defendant Dennis. First, it is unclear precisely what Plaintiff alleges Defendant Dennis

has converted from her, although it appears from Plaintiff's opposition that her claim is based on Defendant SSP's payment of attorneys' fees—from amounts that otherwise would have been distributed to SSP's Members—to Mr. Stern concerning Plaintiff's June 2015 offer to sell her membership interest. *See* ECF No. 73-1 at 12; *see also* FAC ¶ 272–74. Elsewhere, however, Plaintiff alleges that Mr. Stern was counsel for Defendants Mary Sherman and SSP, not the other Members. *See* FAC ¶¶ 67. Consequently, it is unclear what actions Defendant Dennis has taken that amount to a wrongful disposition of Plaintiff's property. *See, e.g.*, *Eunice v. United States*, No. 12CV1635-GPC BGS, 2013 WL 756168, at *5 (S.D. Cal. Feb. 26, 2013) (granting Rule 12(b)(6) motion to dismiss conversion claim where the "[p]laintiff does not provide facts to support allegations as to each Defendant and each Defendant's role in the violation so as to give them notice under Federal Rule of Civil Procedure 8").

Second, the Court agrees with Defendant Dennis that Plaintiff has failed to allege ownership or a right to possession of the allegedly converted funds. Although not published, the Court finds persuasive the California Court of Appeal's decision in *Short v. Ware*, No. D066484, 2015 WL 1084748 (Cal. Ct. App. Mar. 10, 2015). In *Short*, following a falling out among members of various limited liability companies, the plaintiff sued a fellow member for improper distributions from the entities' accounts in the form of payment of loans, bills, and expenses. *See id.* at *2–3. Following a bench trial at which the trial court concluded that the plaintiff had failed to establish conversion, *see id.* at *5–6, the plaintiff appealed. *See id.* at *6. In affirming the trial court's decision, *see id.* at *15, the Court of Appeal concluded that the plaintiff did not have ownership or a right to possession of the funds at issue because he "had an expectancy that he would be paid a one-third share of the distributions from the LLCs, which is not the same as an identified or earmarked amount being held by an agent on behalf of the principal." *See id.* at *12. Further, "[t]he funds used for the distributions belonged to the LLCs, which had a legal existence separate from the members," meaning that the defendant "as a member did not own or convert those funds." *Id.* (citing *PacLink Commc'ns Int'l, Inc. v. Super. Ct.*, 90

Cal. App. 4th 958, 963 (2001)).  Consequently, the plaintiff could "[]not properly make a claim of title or right to possession of that sum, which was owned by the entity and subject to management."  *Id.* at *13 (citing *Moore*, 51 Cal. 3d at 136).

Here, as in *Short*, Plaintiff's "expectancy that [s]he would be paid . . . distributions" from the allegedly converted funds spent by the LLC is not sufficient to establish ownership or a right to possession of the allegedly converted funds.  *See id.* at *12; *see also Nelson v. Anderson*, 72 Cal. App. 4th 111, 126 ("[The shareholder plaintiff] had no ownership interest in the profits of [the corporation] and cannot have been deprived of them."), *as modified on denial of reh'g* (June 14, 1999).  Plaintiff therefore fails to state a claim for conversion as to Defendant Dennis.

Because the Court concludes that Plaintiff's fifth cause of action for conversion is derivative, *see infra* Section III.C.1, and insufficiently pled as to Defendant Dennis, the Court **GRANTS** the Dennis Motion and **DISMISSES** Plaintiff's fifth cause of action for conversion as to Defendant Dennis.

### B.     *The Kramer Motion*

The Kramer Defendants seek dismissal with prejudice of all causes of action alleged against them in Plaintiff's First Amended Complaint: (1) the second cause of action for aiding and abetting breach of fiduciary duty, and (2) the fifth cause of action for conversion.[8]  *See* ECF No. 19-1 at 1, 6.

### 1.     *Claims Against Defendant Hunsaker*

As an initial matter, the Kramer Defendants contend that Plaintiff's claims against Defendant Hunsaker as co-trustee of the L&E Trust must fail because she "fails to plead any conduct by Mr. Hunsaker" except that "Mr. Hunsaker is the co-trustee of the Lynn and Erik's Trust, is a California citizen, and resides in San Diego."  *See* ECF No. 19-1 at 5 (citing FAC ¶¶ 6, 15, 16).  Plaintiff responds that "Mr. Hunsaker was referred to in the FAC whenever Plaintiff referred to Linda Kramer as Co-Trustee," *see* ECF No. 73-1 at 14

---

[8] The Sherman Defendants join in the Kramer Motion.  *See* ECF No. 43.

(citing FAC ¶ 6), and that Defendant "Hunsaker will benefit by [his] wi[fe's] windfalls." *See id.* at 11.

This does not suffice—federal pleading standards require Plaintiff to identify which defendants engaged in the alleged conduct. *See, e.g.*, *Lachi v. GE Capital Bank*, 993 F. Supp. 2d 1228, 1233 (S.D. Cal. 2014) (collecting cases). Accordingly, the Court **GRANTS** the Kramer Motion and **DISMISSES** Plaintiff's second and fifth causes of action as to Defendant Hunsaker as co-trustee of the L&E Trust.

### 2. *Second Cause of Action: Aiding and Abetting Breach of Fiduciary Duty*

In her opposition, Plaintiff notes that "the Co-Trustees of the L & E's Trust . . . may be dismissed from the Aiding and Abetting Claim." *See* ECF No. 73-1 at 13–14. The Court therefore **GRANTS** the Kramer Motion and **DISMISSES** Plaintiff's second cause of action for breach of fiduciary duty against the Kramer Defendants as co-trustees of the L&E Trust.

As for the claim against Defendant Kramer in her individual capacity, that claim suffers the same defects as the claim against Defendant Dennis. *See supra* Section III.A.1. As with Defendant Dennis, Plaintiff alleges that Defendant Kramer "w[as] aware of the misappropriation" because she is an "extremely intelligent, well[-]educated wom[a]n, . . . who ha[s] experience dealing in real estate" and, consequently, "[i]f [she is] not aware of the extent of misappropriation of funds by Defendant Sherman, it is due to [her] own inaction." FAC ¶ 230. Because these allegations amount to the type of "knew or should have known" allegations that federal courts have found insufficient to plead actual knowledge, *see, e.g.*, *Gonzales*, 532 F. Supp. 2d at 1206, the Court **GRANTS** the Kramer Motion and **DISMISSES** Plaintiff's second cause of action for breach of fiduciary duty against Defendant Kramer in her individual capacity.

### 3. *Fifth Cause of Action: Conversion*

Plaintiff's allegations for conversion as to Defendant Kramer, both as co-trustee and in her individual capacity, are indistinguishable from those against Defendant Dennis. *See generally* FAC ¶¶ 264–303. Accordingly, for the reasons discussed above, *see supra*

27

Section III.A.4, the Court **GRANTS** the Kramer Motion and **DISMISSES** Plaintiff's fifth cause of action for conversion as to Defendant Kramer as co-trustee of the L&E Trust and in her individual capacity.

### C.    The SSP Motion

Defendant SSP moves to dismiss with prejudice Plaintiff's first cause of action for breach of fiduciary duty and fifth cause of action for conversion.[9]  *See generally* ECF No. 37 at 2–5.  Although not causes of action, Defendant SSP also challenges Plaintiff's demands for an accounting and indemnification as contrary to the law and the OA, respectively.  *See id.* at 5–6; *see also* ECF No. 93 at 8–10.

### 1.    First Cause of Action: Breach of Fiduciary Duty and Fifth Cause of Action: Conversion

Defendant SSP seeks to dismiss with prejudice Plaintiff's causes of action against it on the grounds that a direct suit is prohibited and that a derivative suit belongs to Defendant SSP, whose members rejected a suit under the business judgment rule.  *See generally* ECF No. 37 at 2–5.  "[T]he principles of derivative lawsuits applicable to corporations likewise apply to a limited liability company."  *PacLink*, 90 Cal. App. 4th at 963.  "Shareholders may bring two types of actions, 'a *direct* action filed by the shareholder individually (or on behalf of a *class* of shareholders to which he or she belongs) for injury to his or her interest *as a shareholder*,' or a '*derivative* action filed on *behalf of the corporation* for *injury to the corporation* for which it has failed or refused to sue.'"  *Schuster v. Gardner*, 127 Cal. App. 4th 305, 311–12 (2005) (emphasis in original) (quoting Friedman, Cal. Practice Guide: Corporations ¶ 6:598 (2004)).  "The two actions are mutually exclusive: i.e., the right of action and recovery belongs either to the *shareholders* (direct action) or to the *corporation* (derivative action)."  *Id.* (quoting Friedman, at ¶ 6:598).

/ / /

/ / /

---

[9] The Sherman Defendants join in the SSP Motion.  *See* ECF No. 44.

### a.    Direct Suit

"The stockholder's individual suit . . . is a suit to enforce a right against the corporation which the stockholder possesses as an individual." *PacLink*, 90 Cal. App. 4th at 963 (quoting *Jones*, 1 Cal. 3d at 107).  A member may also assert an individual cause of action where "a minority stockholder . . . bring[s] suit against the majority stockholders for breach of fiduciary duty." *See id.* (citing *Jones*, 1 Cal. 3d at 107).

Defendant SSP contends that, to the extent Plaintiff is bringing a direct suit against it, the action is prohibited because Plaintiff fails to allege any individualized harm outside of her status as a Member of Defendant SSP and because Plaintiff is not entitled to the minority shareholder exception.  *See* ECF No. 37-1 at 7–11.  Specifically, "Hammett plainly states that the money improperly taken by Sherman should be classified as distributions," *id.* at 9 (citing FAC ¶ 265), meaning "all members of SSP were equally denied their rightfully owed distributions." *Id.* at 10 (citing FAC ¶¶ 174, 230).

Plaintiff responds that the policy considerations favoring derivative actions "do[] not apply to cases involving closely-held corporations." ECF No. 73-1 at 9 (citing *Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1259 (2004)).  Plaintiff also contends that her failure "to receive the distributions she was entitled to makes her a creditor under *Corporations Code 17250*." *See id.* at 11 (emphasis in original).

Defendant SSP replies that Plaintiff's reliance on *Jara* is misplaced because the plaintiff in *Jara* "was *the only shareholder who had suffered any harm*," ECF No. 93 at 3 (emphasis in original) (citing *Jara*, 121 Cal. App. 4th at 1258), whereas Defendant "Sherman allegedly appropriated assets rightfully belonging to all SSP members, therefore harming all SSP members equally." *Id.* at 4 (citing FAC ¶¶ 17, 47, 52, 91, 98, 105, 109, 111, 176, 182, 204, 265–71, 274).

The Court agrees with Defendant SSP that Plaintiff's claims are derivative in nature. Plaintiff contends that her "claim that she failed to receive the distributions she was entitled to makes her a creditor under *Corporations Code 17250*" (which has been repealed, *see* ECF No. 93 at 5), *see* ECF No. 73-1 at 11 (emphasis in original); however, as discussed

above, *see supra* Section III.A.4, "[Plaintiff] ha[s] no ownership interest in the profits of [Defendant SSP] and cannot have been deprived of them." *See Nelson*, 72 Cal. App. 4th at 126; *see also PacLink*, 90 Cal. App. 4th at 964 ("Because members of the LLC hold no direct ownership interest in the company's assets . . . , the members cannot be directly injured when the company is improperly deprived of those assets.") (footnote omitted) (citing Cal. Corp. Code § 17300). Accordingly, "[t]he nature of [Plaintiff]'s proof establishes that any injury was to the corporation." *See Nelson*, 72 Cal. App. 4th at 126; *see also PacLink*, 90 Cal. App. 4th at 964 ("The injury was essentially a diminution in the value of their membership interest in the LLC occasioned by the loss of the company's assets. Consequently, any injury to plaintiffs was incidental to the injury suffered by [the LLC].").

The question therefore becomes whether Plaintiff sufficiently has alleged that she is entitled to bring a direct action as a minority shareholder. Defendant SSP contends "Hammett is not entitled to the minority shareholder exception under *Jones*" because "Hammett is not a minority shareholder, and Sherman is not a majority shareholder; they equally own 14.1571% of SSP." ECF No. 37-1 (citing FAC ¶ 14; OA at A1). Further, "Hammett makes no claims that she was personally harmed in her individual capacity; she states that Sherman breached her fiduciary duties to SSP as a whole." *Id.* (citing FAC ¶ 17). Plaintiff counters that "the gravamen of the FAC clearly concerns the conspiracy of the Member Defendants and the counsel that supposedly represented SSP, as the majority, combining to allow to whomever the Manager gave the money to retain 'a disproportionate share of the corporation's ongoing value.'" ECF No. 73-1 at 11 (quoting *Jara*, 121 Cal. App. 4th at 1258).

The Court concludes that Plaintiff has not alleged facts allowing her to assert a direct claim as a minority shareholder. As discussed above, *see supra* Sections III.A.1, III.B.2, Plaintiff has failed to allege facts raising a plausible inference that Defendants Dennis and Kramer was aware of Defendant Mary Sherman's alleged breach of fiduciary duty. Plaintiff therefore fails to allege that the Member Defendants, acting together as a majority,

engaged in a "conspiracy" to prevent Plaintiff from obtaining her fair share of Defendant SSP's value. Further, a direct action for a minority shareholder exists only "[i]f the injury is not incidental to an injury to the corporation." *See Jones*, 1 Cal. 3d at 107. As discussed above, *see supra* pages 29–30, Plaintiff's injury is incidental to that suffered by Defendant SSP—and, thereby, the other Member Defendants.

Because Plaintiff has failed to allege an injury separate from that suffered by Defendant SSP and its Members or that Defendants acted as a majority to deprive Plaintiff—and Plaintiff alone—of her fair share in Defendant SSP, Plaintiff is not entitled to assert a direct action against Defendant SSP. The Court therefore **GRANTS** the SSP Motion and **DISMISSES** Plaintiff's direct claims against Defendant SSP.

### b. Derivative Suit

"A shareholder's derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders when injury is caused to the corporation that may not otherwise be redressed because of failure of the corporation to act." *PacLink*, 90 Cal. App. 4th at 963 (quoting *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 106 (1969)). "Thus, the action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, *or it seeks to recover assets for the corporation or to prevent the dissipation of its assets*." *Id.* (emphasis in original) (quoting *Jones*, 1 Cal. 3d at 106–07). Because the authority to manage the business of a corporate entity— including the commencement of an action on its own behalf—belongs to the managing members of an LLC, *see Grosset v. Wenaas*, 42 Cal. 4th 1100, 1108 (2008), the complaint must allege a pre-suit demand on the other members of the LLC or the reasons why such a demand would have been futile. *See* Fed. R. Civ. P. 23.1(b)(3).

Defendant SSP contends that, to the extent Plaintiff's suit is derivative, the suit must be dismissed because the other Members of the LLC voted against Plaintiff's demand to file this litigation and that decision is protected by the business judgment rule. *See* ECF No. 37-1 at 11–12. Defendant SSP adds that there is no "possibility that SSP members'

vote against litigation was uninformed" given that "[m]embers consulted with legal counsel and had contact with both Hammett and Sherman for decades, giving members a reasonable opportunity to ascertain the facts regarding Hammett's allegations against Sherman," *see id.* at 12 (citing FAC ¶¶ 56, 67–68, 73, 98, 193–94, 220, 229, 233, 272, 290), and "Hammett pummeled SSP members with allegations of Sherman's misconduct for years." *See id.* (citing FAC ¶¶ 20, 54, 122, 134, 157, 162, 172, 234, 285). Further, "Hammett alleges no facts that indicate SSP members did not vote in good faith when they declined to litigate Hammett's demands," such as Defendant Mary Sherman's participation in any of the votes or attempting to induce a voting member to vote against the litigation. *See id.* at 13 (citing FAC ¶¶ 55, 115, 170, 172). In fact, "all members were equally deprived of the distributions," meaning "SSP members had a financial interest in pursuing litigation against Sherman." *See id.* (citing FAC ¶¶ 230, 265).

Plaintiff does not respond to these arguments. *See generally* ECF No. 73-1. Under Ninth Circuit precedent, the Court may therefore dismiss Plaintiff's derivative causes of action against Defendant SSP as abandoned. *See Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (dismissing causes of action as abandoned where plaintiff did not oppose dismissal in her opposition); *Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-2999 BEN (WVG), 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate."); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that the plaintiff forfeited her right to raise an issue on appeal because her opposition to a motion to dismiss failed to suggest a continuing interest in pursuing the claim and therefore "effectively abandoned" it). The Court recognizes, however, that "public policy favor[s] disposition of cases on their merits." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998).

On the merits, the Court agrees that Plaintiff has failed to allege facts showing that the Members' decision to reject her pre-filing demand was not protected by the business judgment rule. "[T]he business judgment rule obligates a director to perform his or her

duties 'in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances' . . . ; and it insulates a director from liability when he or she performs those obligations in the manner provided in the statute." *Bader v. Anderson*, 179 Cal. App. 4th 775, 787–88 (2009) (quoting Cal. Corp. Code § 309(a)) (citing Cal. Corp. Code §309(c)). "Thus, the business judgment rule 'protects a board's good faith decision to reject a derivative lawsuit' so long as the majority of the board does not have a personal interest in the lawsuit's outcome." *Id.* at 788 (quoting *Desaigoudar v. Meyercord*, 108 Cal. App. 4th 173, 184 (2003)). To rebut the business judgment rule, a plaintiff must plead gross misconduct or malfeasance as to the substance or procedure in adopting the challenged transaction. *See id.* at 798.

There are no allegations sufficient to rebut the business judgment rule in Plaintiff's First Amended Complaint. Indeed, despite Plaintiff's allegations that Defendant Mary Sherman held a majority of outstanding voting shares as trustee of the J&M and Grandchildren Trusts, *see* FAC ¶¶ 114, 181, Plaintiff alleges that it was the "other members" who voted against her litigation demand. *See, e.g., id.* ¶¶ 98, 115. Plaintiff does not allege that Defendants Dennis' and Kramer's votes were uninformed; indeed, Plaintiff appears to have repeatedly informed them of her bases for seeking legal action, *see id.* ¶¶ 54, 122, 234–35, including "inform[ing] the company and the board in writing of the ultimate facts of each cause of action against each defendant and delivered to the company and the board a true copy of the complaint which plaintiff propose[d] to file on several occasions." *See id.* ¶ 285. Further, Defendants Dennis and Kramer, who "are extremely intelligent, well[-]educated women, both who have experience dealing in real estate," *see id.* ¶ 230, appear to have received counsel from Defendant SSP's attorneys, *see id.* ¶ 233, and were free to hire their own counsel, if they deemed it necessary. Critically, if Defendants Dennis and Kramer believed that there was any merit to Plaintiff's allegations, it would have been in their interest to vote in favor of the litigation, which claims that

Defendant Mary Sherman has misappropriated SSP funds to her own benefit, thereby depriving Plaintiff—as well as Defendants Dennis and Kramer—of their fair share of those funds. *See id.* ¶¶ 265, 275; *see also* OA. These allegations do not support an inference that Defendants acted with gross misconduct or malfeasance in voting against Plaintiff's litigation demand. *See Bader*, 179 Cal. App. 4th at 798.

Because Plaintiff fails to allege any facts to rebut the presumption that Defendants Dennis' and Kramer's votes to reject a derivative suit are protected by the business judgment rule, the Court **GRANTS** the SSP Motion and **DISMISSES** Plaintiff's derivative claims against Defendant SSP.

### 2. Accounting

As part of her prayer for relief, Plaintiff requests an accounting. *See* FAC at 71–76. Defendant SSP contends that Plaintiff cannot demand an accounting because LLC members have no legal right to demand an accounting under the California Corporations Code, which requires only that a member be permitted to view the company's books at the company's principal place of business or that the LLC mail or electronically send financial records to a member at the member's expense. *See* ECF No. 37-1 at 18 (citing Cal. Corp. Code §§ 1601(a), 1602). Plaintiff responds that she "alleged SSP has not complied with reporting requirements" and that "[w]hether SSP and the manager complied or not is a disputed fact and not proper to decide by a motion under FRCP 12(b)(6)." *See* ECF No. 73-1 at 23. Defendant SSP reiterates on reply that it "does not have an affirmative duty to provide an accounting to a member" and adds that "a member's opportunity to request records from an LLC becomes invalid under the California Corporations Code at the commencement of litigation." *See* ECF No. 93 at 6 (citing *Jara*, 121 Cal. App. 4th at 1264).

"A right to an accounting is derivative; it must be based on other claims." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1120 (E.D. Cal. 2014) (quoting *Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th 824, 833–34 (1998)). Because the Court has dismissed Plaintiff's causes of action against Defendant SSP, *see supra* Section III.C.1, Plaintiff's

First Amended Complaint fails to support the requested accounting. *See Flores*, 997 F. Supp. 2d at 1120 ("The complaint lacks facts to support an accounting, especially given dismissal of the complaint's other claims from which to derive an accounting.").

### 3. Indemnification

Plaintiff also prays for "specific performance for indemnity." *See* FAC at 76–77. She appears to request that the Court order that the indemnification of Defendant SSP and Defendant Sherman was improper. *See id.* Because the Court concludes that Plaintiff has failed to allege a valid cause of action, *see generally* Section III, the Court also concludes that the First Amended Complaint fails to provide a basis for the Court to "agree with Plaintiff that indemnification for none is the proper ruling." *See* FAC at 77.

### D. The Sherman Motion

The Sherman Defendants seek dismissal with prejudice of all causes of action alleged against them in Plaintiff's First Amended Complaint: (1) the first cause of action for breach of fiduciary duty, (2) the second cause of action for aiding and abetting breach of fiduciary duty, (3) the third cause of action for defamation per se, (4) the fourth cause of action for civil conspiracy to defame, and (5) the fifth cause of action for conversion. *See* ECF No. 40-1 at 6–7; *see also* ECF No. 94 at 7–8.

### 1. Claims Against Defendant Jeffrey Sherman

Plaintiff alleges two causes of action against Defendant Jeffrey Sherman as co-trustee of the J&M Trust: (1) the second cause of action for aiding and abetting a breach of fiduciary duty, and (2) the fifth cause of action for conversion. *See* FAC ¶¶ 214–41, 264–83. The Sherman Defendants contend that these claims must be dismissed because Plaintiff "alleges **nothing** against [him] that would remotely suggest that [he] aided and abetted a breach of fiduciary duties to the Plaintiff" or "any facts . . . that would rise to the level of a conversion claim." *See* ECF No. 40-1 at 8, 11. Indeed, Plaintiff only identifies Defendant Jeffrey Sherman in six paragraphs of the First Amended Complaint, none of which "has anything to do with aiding and abetting a breach of fiduciary duty" or conversion. *See id.* at 10 (citing FAC ¶¶ 3, 16, 19, 23, 31, 224).

As with Defendant Hunsaker, *see supra* Section III.B.1, Plaintiff responds that Defendant Jeffrey Sherman was referred to in the First Amended Complaint whenever Plaintiff referred to Defendant Mary Sherman as a co-trustee, *see* ECF No. 73-1 at 14 (citing FAC ¶ 3), and that Defendant J. "Sherman . . . will benefit by [his] wi[fe's] windfalls." *See id.* at 11. Again, as discussed above, *see supra* Section III.B.1, this does not suffice—federal pleading standards require Plaintiff to identify which defendants engaged in the alleged conduct. *See, e.g.*, *Lachi*, 993 F. Supp. 2d at 1233. The Court therefore **GRANTS** the Sherman Motion and **DISMISSES** Plaintiff's second and fifth causes of action as to Defendant Jeffrey Sherman as co-trustee of the J&M Trust.

### 2. Claims Against Defendant Mary Sherman as Manager of SSP

Plaintiff appears to allege two causes of action against Defendant Mary Sherman as Manager of SSP: (1) the first cause of action for breach of fiduciary duty, and (2) the fifth cause of action for conversion. *See* FAC ¶¶ 202–13, 264–83. The Sherman Defendants contend that these causes of action must be dismissed because they are properly asserted derivatively on behalf of SSP, which voted against Plaintiff's demand. *See* ECF No. 40-1 at 11–12. Further, "none of the allegations allege that Mary Sherman, as Manager, ever breached a fiduciary duty to Plaintiff or converted anything." *See id.* at 12.

Here, Plaintiff alleges that Defendant Mary Sherman breached her fiduciary duties by, among other things, delaying and withholding disbursements to Plaintiff, paying unreasonable management fees, hiring attorneys (who also have conflicts of interest), misrepresenting the NOI of Defendant SSP, and causing Defendant SSP to make loans to herself. *See, e.g.*, FAC ¶¶ 204, 207–09, 211. As for the conversion claim, Plaintiff alleges that Defendant Mary Sherman "is calling many of the assets she embezzled 'bonuses,'" which, if misappropriated, should have been distributions to Plaintiff (and SSP's other Members). *See id.* ¶ 266.

For the reasons discussed above, *see supra* Section III.C.1, these claims are derivative in nature, and Plaintiff fails to allege any facts to rebut the presumption that the vote to reject a derivative suit is protected by the business judgment rule. Accordingly, the

Court **GRANTS** the Sherman Motion and **DISMISSES** Plaintiff's claims against Defendant Mary Sherman in her capacity as Manager of SSP.

### 3. Claims Against Defendant Mary Sherman as an Individual

Finally, Plaintiff alleges up to four causes of action against Defendant Mary Sherman in her individual capacity: (1) the second cause of action for aiding and abetting a breach of fiduciary duty, (2) the third cause of action for defamation per se, (3) the fourth cause of action for civil conspiracy to defame, and (4) the fifth cause of action for conversion. *See* FAC ¶¶ 214–83.

#### a. Second Cause of Action: Aiding and Abetting Breach of Fiduciary Duty

Because the Court has dismissed Plaintiff's first cause of action for breach of fiduciary duty, *see supra* Sections III.C.1, III.D.2, there remains no alleged breach of fiduciary duty in which Defendant Mary Sherman, individually, could have aided and abetted. *See, e.g.*, *Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST ANX, 2012 WL 7071488, at *7 (C.D. Cal. Dec. 26, 2012) ("Without a principal who has breached a fiduciary duty, Plaintiffs have failed to allege a claim for aiding and abetting a breach of fiduciary duty.").

The Sherman Defendants also contend that "alleging that Mary Sherman individually aided and abetted a breach of fiduciary duty would be akin to saying that she aided and abetted herself," whereas "the elements of the tort require that the wrongdoing be done **by a third party**." *See* ECF No. 40-1 at 13 (citing CACI 3610; *Nasrawi*, 231 Cal. App. 4th at 343). Although no California cases explicitly hold that a defendant cannot aid and abet herself, the Court finds persuasive authorities from neighboring states reaching this conclusion. *See, e.g.*, *Jansen v. Deschutes Cty.*, No. 6:17-CV-01276-MK, 2019 WL 7476690, at *21 (D. Or. Sept. 30, 2019) ("Multiple decisions from this District have found that a person cannot aid and abet himself or herself.") (collecting cases), *report and recommendation adopted*, 2020 WL 42463 (D. Or. Jan. 3, 2020); *Terrell v. Cent. Wash. Asphalt, Inc.*, 168 F. Supp. 3d 1302, 1316 (D. Nev. 2016) ("[The defendant] cannot aid and

abet himself."); *Okonkwo v. Intel Corp.*, No. CV-15-01199-PHX-SPL, 2016 WL 5958165, at *3 (D. Ariz. May 11, 2016) ("One cannot aid and abet himself."); *Hillhouse v. Haw. Behaviorial Health, LLC*, No. 14-00155 LEK-BMK, 2016 WL 2992908, at *8 (D. Haw. Jan. 29, 2016) ("[A]s a matter of law[,] . . . [the defendant] cannot aid and abet himself."); *Blixseth v. Brown*, 470 B.R. 562, 567 (D. Mont. 2012) ("[I]t goes without saying that individuals cannot aid and abet themselves.") (quoting *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 121 (D. Conn. 2010)); *see also Taylor v. Beth Eden Baptist Church*, 294 F. Supp. 2d 1074, 1082 (N.D. Cal. 2003) ("The concept of aiding and abetting involves two separate persons, one helping the other.").

The Court therefore **GRANTS** the Sherman Motion and **DISMISSES** Plaintiff's second cause of action for aiding and abetting breach of fiduciary duty as to Defendant Mary Sherman in her individual capacity.

> b.  Third Cause of Action: Defamation Per Se

Plaintiff alleges that Defendant Mary Sherman, in her individual capacity, defamed Plaintiff when she sent the following "private email"—perhaps on February 2, 2017—to her other sisters:

> SSP LLC refuses to be bullied any longer by this ungrateful creature who has sent hundreds of accusatory emails over the past 12 years with no basis, since our business flourished and grew and we each reaped financial reward. [Plaintiff] chooses to break the law over and over and over (as evidenced by being fired from the County, having a $250K judgment imposed against her by CSSD, and not paying CA taxes since 2011).

FAC ¶ 134 (alteration in original); *see also id.* ¶ 251. As did Defendant Dennis, *see supra* Section III.A.2, Defendant Mary Sherman contends that Arkansas law, which has abolished defamation per se, should apply. *See* ECF No. 40-1 at 13–16.

The Court previously concluded that Arkansas law applied to statements made by a non-California resident about a non-California resident to recipients in California. *See supra* Section III.A.2.a. The only difference here is that Defendant Mary Sherman is also a California resident, meaning that the statements were made in California. *See* FAC ¶ 2.

Assuming that this suffices to create a "true conflict," the Court again concludes that Arkansas' interests would be more impaired than California's if its law were not applied given Arkansas' interest in avoiding "unjustifiable inequities" for its own residents arising from application of defamation per se. *See Murphy*, 331 Ark. at 370 (quoting *Nazeri*, 860 S.W.2d at 313). The Court therefore **GRANTS** the Sherman Motion and **DISMISSES** Plaintiff's third cause of action for defamation per se as to Defendant Mary Sherman in her individual capacity.

### c. Fourth Cause of Action: Civil Conspiracy to Defame

In her fourth cause of action, Plaintiff alleges that Defendant Mary Sherman "joined with non-named Sandi Kramer and Ellis Stern to defame Plaintiff per se." *See* FAC ¶ 258. Because the Court concludes that Plaintiff has failed to state a claim against Defendant Mary Sherman in her individual capacity for defamation per se, *see supra* Section III.D.3.b, the Court **GRANTS** the Sherman Motion and **DISMISSES** Plaintiff's fourth cause of action for civil conspiracy to defame as to Defendant Mary Sherman in her individual capacity.

### d. Fifth Cause of Action: Conversion

Finally, Plaintiff appears to bring a fifth cause of action against Defendant Mary Sherman in her individual capacity for conversion. *See* FAC ¶¶ 264–83. Defendant Mary Sherman contends that, "[t]o the extent Plaintiff intended to direct the Fifth Cause of Action to Mary Sherman individually, there are no facts alleged suggesting that Mary Sherman, individually, did anything wrong." *See* ECF No. 40-1 at 16.

The Court previously concluded that Plaintiff failed to state a claim for conversion as to Defendant Dennis or Defendant Kramer for the "bonuses," computers, Audi lease, or attorneys' fees. *See supra* Sections III.A.4, III.B.3. To the extent Plaintiff's claim for conversion against Defendant Mary Sherman in her individual capacity is based on the same conduct, that claim, too, must fail.

To the extent that Plaintiff alleges that Defendant Mary Sherman delayed distribution of the funds to which Plaintiff was entitled for the sale of the Property and

"with[eld] and convert[ed] $50,000 of Plaintiff's distribution to use as a defense fund in the event Plaintiff sued," *see* FAC ¶ 204, the Court concludes that Plaintiff fails to state a claim. As discussed above, *see supra* Section III.A.4, a claim for conversion requires a plaintiff to plead damages. *See G.S. Rasmussen*, 958 F.2d at 906. Here, Plaintiff includes no allegations as to harm she suffered as a result of Defendant Mary Sherman's withholding of these funds; indeed, Plaintiff specifically alleges that "the money was returned, thus curing the conversion." *See* FAC ¶ 204. Plaintiff therefore fails to state a claim for conversion against Mary Sherman in her individual capacity for the withholding of funds to which Plaintiff did have ownership or a right of possession.

Consequently, the Court **GRANTS** the Sherman Motion and **DISMISSES** Plaintiff's fifth cause of action for conversion as to Defendant Mary Sherman in her individual capacity.

**UNDERTAKING MOTION**

## I. Legal Standard

"There is no specific provision in the Federal Rules of Civil Procedure relating to security for costs." *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994). "However, the federal district courts have inherent power to require plaintiffs to post security for costs." *Id.* (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1121 (9th Cir. 1987)). "Typically federal courts, either by rule or by case-to-case determination, follow the forum state's practice with regard to security for costs." *Id.* (quoting 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2671).

> In addition to following the forum state's practice, the Court should balance several factors in assessing the propriety of requiring a plaintiff to post security for costs, including whether the litigation has "the appearance of vexatiousness" and:
>
> > (i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the

> defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective.

*A. Farber & Partners, Inc. v. Garber*, 417 F. Supp. 2d 1143, 1146 (C.D. Cal. 2006) (quoting *Simulnet*, 37 F.3d at 575–76). "The imposition of a costs bond is within the [c]ourt's discretion." *Brightwell v. McMillan Law Firm*, No. 16-CV-1696 W (NLS), 2017 WL 6944415, at *2 (S.D. Cal. May 12, 2017) (citing *Kourtis v. Cameron*, 358 Fed. App'x 863, 866 (9th Cir. 2009)).

Under California law, "[w]hen the plaintiff in an action . . . resides out of the state . . . , the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding." Cal. Civ. Proc. Code § 1030(a). "The motion shall be made on the grounds that the plaintiff resides out of the state or is a foreign corporation and that there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding." Cal. Civ. Proc. Code § 1030(b). "The motion shall be accompanied by an affidavit in support of the grounds for the motion," which "shall set forth the nature and amount of the costs and attorney's fees the defendant has incurred and expects to incur by the conclusion of the action or special proceeding." *Id.*

"To satisfy the requirements of section 1030, the [d]efendant must demonstrate a reasonable possibility of success on each of [the p]laintiff's claims." *Johnson v. Altamirano*, No. 3:19-CV-01185-H-BLM, 2019 WL 6467551, at *20 (S.D. Cal. Dec. 2, 2019) (citing *Brightwell*, 2017 WL 6944415, at *2). "Section 1030(b)'s 'reasonable possibility' standard 'is relatively low.'" *Id.* (quoting *Wilson & Haubert, PLLC v. Yahoo! Inc.*, No. C-13-5879 EMC, 2014 WL 1351210, at *3 (N.D. Cal. Apr. 4, 2014)), *reconsideration denied, stay granted*, 2020 WL 487301 (S.D. Cal. Jan. 30, 2020). "But it 'is not so low as to be non-existent.'" *Id.* (quoting *Wilson & Haubert*, 2014 WL 1351210, at *3). "District courts should not 'read section 1030 so broadly as to require every out-

of-state litigant who brings a non-frivolous suit in California to post a bond simply because there is a reasonable chance the defendant may prevail.'" *Id.* (quoting *Wilson & Haubert*, 2014 WL 1351210, at *3) (citing *BladeRoom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-CV-01370-EJD, 2018 WL 1989530, at *1 (N.D. Cal. Jan. 4, 2018)). "Further, the Ninth Circuit has cautioned that '[i]n requiring a security bond for defendants' costs, care must be taken not to deprive a plaintiff of access to the federal courts.'" *Id.* (quoting *Simulnet*, 37 F.3d at 575–76). "While it is neither unjust nor unreasonable to expect a suitor to put his money where his mouth is, toll-booths cannot be placed across the courthouse doors in a haphazard fashion." *Id.* (quoting *Simulnet*, 37 F.3d at 576) (internal quotation marks omitted).

## II. Analysis

The Sherman Defendants request that the Court order Plaintiff, a resident of Arkansas, to post an undertaking in the amount of $150,000 to cover attorneys' fees and costs, *see* ECF No. 41-4 at 3, or, alternatively, $50,000 to cover anticipated costs, *see* ECF No. 95 at 2, on the grounds that "many of Plaintiff's claims are barred as a matter of law" as discussed in the Motions to Dismiss. *See id.* Plaintiff opposes, arguing that her "case is not frivolous" and "[t]here is no reasonable possibility that the Sherman Defendants will prevail." *See* ECF No. 79-1 at 4.

Plaintiff does not dispute that, as a resident of Arkansas, she "resides out of state." *See* Cal. Civ. Proc. Code § 1030(a); FAC ¶ 14; *see also generally* ECF No. 79. "Thus, '[t]he first requirement of [C.C.P.] § 1030 . . . is satisfied,'" and "the court turns to the second element under [C.C.P.] section 1030(b), which requires defendants to show a 'reasonable possibility' they will obtain judgment in their favor." *A. Farber & Partners*, 417 F. Supp. 2d at 1146 (alterations in original) (quoting *Ismart Int'l Ltd. v. I-Docsecure, LLC*, No. C-04-03114 RMW, 2005 WL 588607, *9 (N.D. Cal. Feb. 14, 2005)).

Assuming that the Court's decision to grant the Sherman Motion establishes a reasonable possibility of the Sherman Defendants obtaining a judgment in their favor, *see supra* pages 35–40; *but cf. Great Dynasty Int'l Fin. Holdings Ltd. v. Li*, No. C-13-1734 EMC, 2013 WL 12212925, at *1 (N.D. Cal. Dec. 16, 2013) (denying motion under section

1030 despite granting motion to dismiss complaint), the Sherman Defendants nonetheless fail to carry their burden of establishing their entitlement to a bond under Section 1030(b) for several reasons. First, the Sherman Defendants failed to address in the Undertaking Motion the grounds on which they would be entitled to fees in the event they prevail on their defenses, improperly raising the issue only on reply. *See generally* ECF No. 41-1; ECF No. 95 at 2; *see also, e.g.*, *DeFrees v. Kirkland*, No. CV 11-4272 GAF (SPX), 2012 WL 12885114, at *24 (C.D. Cal. July 20, 2012) ("[T]he Court need not even consider th[e] argument [concerning the basis for defendants to recover fees], because it is raised for the first time in reply, but could and should have been raised in the initial memoranda. By saving this argument for reply, Movants have prevented Plaintiffs from responding.") (citing *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 n.6 (9th Cir. 2004)), *aff'd in part, remanded in part*, 579 F. App'x 538 (9th Cir. 2014).

Second, the Sherman Defendants' supporting affidavit fails to establish the reasonableness of the fees requested, with counsel conclusorily "estimate[ing] that[,] if this matter is not dismissed early in the case, the total fees and costs incurred in this matter could exceed $150,000.00 . . . based upon [his] experience, the total number of hours [he] estimate[s] will be expended in this action, and [his] hourly rate of $400.00 per hour." *See* ECF No. 41-2 ¶ 3. "This vague justification, without more, is insufficient to allow the Court to determine the reasonableness of this amount." *See Donshen Textile (Holdings) Ltd. v. Rabinowitz*, No. CV1309030SJOSHX, 2014 WL 12638884, at *3 (C.D. Cal. May 5, 2014); *accord MH Pillars Ltd. v. Realini*, No. 15-CV-1383-PJH, 2017 WL 916414, at *15 (N.D. Cal. Mar. 8, 2017) ("Defendants have not met their burden of showing . . . that the extent of the security they request to be posted is reasonable, from any perspective."); *Retamco Operating, Inc. v. Carone*, No. CV 04-2997 CBM (RZX), 2005 WL 8165768, at *3 (C.D. Cal. Feb. 23, 2005) ("[T]he Court finds that the bond amount requested is not reasonable or sufficiently substantiated."); *GeoTag, Inc. v. Zoosk, Inc.*, No. C-13-0217 EMC, 2014 WL 793526, at *4 (N.D. Cal. Feb. 26, 2014) ("[The defendant]'s rough estimation, with absolutely no itemization, is inadequate.").

Third, the Sherman Defendants have not shown that an undertaking is necessary or that they will suffer prejudice absent a cost bond. *See, e.g.*, *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 3:12-CV-04000-SC, 2015 WL 6638929, at *16 (N.D. Cal. Oct. 30, 2015) ("Finally, while not expressly articulated in section 1030, the Court finds significant the fact that [the defendant] has not demonstrated that there is a risk that it would be unable to recover costs from Plaintiff . . . in the event it prevails in this action."); *Kim v. Truck Ins. Exch.*, No. CV 14-4270 RSWL VBKX, 2015 WL 4163017, at *2 (C.D. Cal. July 8, 2015) ("Here, Defendant . . . has failed to establish a legitimate risk that it will be unable to recover costs from Plaintiff."); *Metal Jeans, Inc. v. Lululemon USA, Inc.*, No. 2:15-CV-00738-CAS, 2015 WL 3533199, at *3 (C.D. Cal. June 3, 2015) ("Most importantly, defendant has not shown that plaintiff would be unable to pay an award of attorneys' fees."); *Wilson & Haubert*, 2014 WL 1351210, at *4 ("Finally, while not expressly articulated in section 1030, the Court finds significant, as an exercise of its power to manage cases, the fact that [the defendant] has not demonstrated that there is a risk that it would be unable to recover costs from Plaintiff in the event it prevails in this action."); *Susilo v. Wells Fargo Bank, N.A.*, No. CV 11-1814 CAS PJWX, 2012 WL 5896577, at *2 (C.D. Cal. Nov. 19, 2012) ("Without any particularized showing that there is a real risk of defendants being unable to recover costs and attorney's fees to which they are entitled, there is simply no basis on which to require plaintiff to post a bond."); *Lopez v. Cher Koon Teo*, No. CV0903688RGKFFMX, 2010 WL 11519993, at *4 (C.D. Cal. July 1, 2010) ("Defendants have not established that a cost bond is necessary to avoid prejudice."); *Plata v. Darbun Enters., Inc.*, No. 09CV44-IEG CAB, 2009 WL 3153747, at *12 (S.D. Cal. Sept. 23, 2009) ("Defendant has not set forth any details regarding its legitimate need for the prophylaxis of a bond in its moving papers."). Indeed, it appears that Plaintiff received over $1 million from the sale of the Property in 2017, *see* FAC ¶¶ 80–81, which is more than sufficient to cover the unsubstantiated fees and costs claimed by the Sherman Defendants in the event that they do obtain a favorable judgment and an award of fees and/or costs.

For all these reasons, the Court **DENIES** the Sherman Defendants' Undertaking Motion.

**FEE MOTIONS**

**I. Background**[10]

In her First Amended Complaint, Plaintiff added the MKZ Defendants and S&G Defendants to her fifth cause of action for conversion, as well as a sixth cause of action for legal malpractice against the MKZ and S&G Defendants. *See* FAC ¶¶ 264–303. After the MKZ and S&G Defendants filed Special Motions to Strike Plaintiff's First Amended Complaint and, Alternatively, Motions to Dismiss Plaintiff's First Amended Complaint (the "anti-SLAPP Motions") on July 30, 2019, *see* ECF Nos. 20, 21, respectively, Plaintiff voluntarily dismissed her fifth and sixth causes of action as to the MKZ and S&G Defendants. *See* ECF No. 38. The Court therefore denied as moot the anti-SLAPP Motions. *See* ECF No. 39. The MKZ Motion followed on September 3, 2019, *see* ECF No. 49, and the S&G Motion on September 5, 2019. *See* ECF No. 54.

**II. Legal Standard**

"[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1). This is the case even where a plaintiff voluntarily dismisses her causes of action against a defendant who

_____

[10] On September 24, 2019, the MKZ Defendants filed a Notice of Errata indicating that Patrick C. McGarrigle erroneously submitted declarations in support of their motion to dismiss and Fee Motion attesting that the "foregoing" was true and correct rather than that the "following" was true and correct. *See generally* ECF No. 76. Plaintiff objected to the Notice of Errata, contending that it constituted an untimely amendment of the underlying declarations and that "[t]he error was not 'typographical.'" *See* ECF No. 77; *see also* ECF No. 78-1 at 6. Because the Court does not rely on Mr. McGarrigle's declarations in ruling on the instant Fee Motions, the Court **DENIES AS MOOT** Plaintiff's objection (ECF No. 77).

Plaintiff also filed evidentiary objections to the Declaration of Patrick C. McGarrigle filed in support of MKZ's anti-SLAPP Motion, *see* ECF No. 86, and to the Declaration of Alan N. Goldberg filed in support of S&G's anti-SLAPP Motion. *See* ECF No. 87. As MKZ notes, *see* ECF No. 91, these evidentiary objections were not timely filed in accordance with the Court's September 3, 2019 briefing schedule. *See* ECF No. 46. The Court therefore **DENIES** Plaintiff's objections to the McGarrigle and Goldberg Declarations filed in support of the anti-SLAPP Motions (ECF Nos. 86, 87).

has brought a motion under California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute. *See, e.g.*, *Gottesman v. Santana*, 263 F. Supp. 3d 1034, 1040–41 (S.D. Cal. 2017) (collecting cases). In such circumstances, the court "considers (1) whether [the moving] Defendants are 'prevailing defendants' under the anti-SLAPP statute, and, if so, (2) whether and to what extent [the moving] Defendants are entitled to attorneys' fees and costs." *Id.* at 1042.

## III.   Analysis

Both the MKZ and S&G Defendants seek attorneys' fees incurred in pursuing their anti-SLAPP Motions and the resultant Fee Motions on the grounds that they are prevailing parties given Plaintiff's voluntary dismissal of her causes of action against them. *See generally* ECF Nos. 49, 54.

### A.   *Prevailing Defendants*

The Court must first determine whether Defendants are "prevailing parties." *See Gottesman*, 263 F. Supp. 3d at 1042. "California courts differ in approach when determining whether a defendant is a prevailing defendant under the anti-SLAPP statute when that defendant has been voluntarily dismissed from the action." *Id.* at 1043 (citing *Mireskandari v. Daily Mail*, No. CV 12-02943 MMM (FFMx), 2014 WL 12561581, at *5 (C.D. Cal. Aug. 4, 2014)). Most federal courts, including this Court, have followed *Coltrain v. Shewalter*, 66 Cal. App. 4th 94 (1998), pursuant to which "a plaintiff's voluntary dismissal raises a presumption that the defendant is the prevailing party that the plaintiff can rebut by explaining its reason for dismissal." *See Gottesman*, 263 F. Supp. 3d at 1043 (citing *Coltrain*, 66 Cal. App. 4th at 107). To rebut this presumption, the plaintiff must establish that the dismissal was the result of realizing her objectives in the litigation. *See id.* (quoting *Coltrain*, 66 Cal. App. 4th at 107).

### 1.   *The MKZ Defendants*

The MKZ Defendants contend that they are prevailing parties entitled to fees under Section 425.16(c) because Plaintiff's "claims [against them] all derive from litigation[-]related activities and privileged activities, none of which are actionable by

Ms. Hammett against MKZ." *See* ECF No. 49-1 at 8. Further, "Ms. Hammett cannot offer any evidence that the dismissal comes as a consequence of her fulfilling or obtaining her objectives in filing the claims against MKZ" given that "her dismissal of the conversion claim was a result of the anti-SLAPP motion, not because she had obtained her objective." *Id.*

Plaintiff raises several arguments in response.[11] First, Plaintiff appears to argue that the MKZ and S&G Defendants would not have prevailed on their anti-SLAPP Motions because "the causes of action against the attorney defendants do not arise from an act in connection with a public issue." *See* ECF No. 78-1 at 2. Second, Plaintiff contends that "the acts complained of do not arise from free speech or right to petition." *See id.* at 3. Specifically, "[t]he malpractice claim was supposed to be brought on behalf of SSP, the Attorney Defendants' client" and "was therefore not subject to a special motion to strike," while "conversion is an independent tort that does not arise from free speech or petitioning activity." *See id.* at 4. Finally, Plaintiff asserts that she "intends to refile the conversion claim after obtaining leave to file the aiding and abetting claims against the Attorney Defendants" and "may be able to sue the Attorney Defendants for legal malpractice as a third party." *See id.* at 5.

The MKZ Defendants rejoin that Plaintiff fails to rebut the presumption that they are the prevailing party for purposes of Section 425.16(c). *See* ECF No. 92 at 2–3. Indeed, the MKZ Defendant urge, "Ms. Hammett's assertion that she may refile the defective claims actually supports the conclusion that her dismissal did not come as a result of her achieving her litigation goals." *See id.* at 3.

/ / /

---

[11] Plaintiff appears to raise some argument concerning the amount of time she had to oppose the Fee Motions. *See* ECF No. 78-1 at 2. The MKZ Motion was filed on September 3, 2019, *see* ECF No. 49, and the S&G Motion was filed on September 5, 2019. *See* ECF No. 54. The Court ordered all oppositions to be filed on or before September 26, 2019. *See* ECF No. 46. This means that Plaintiff had twenty-one days to file an opposition, which exceeds the default briefing schedule set by Civil Local Rule 7.1(e)(2) by a full week.

19-CV-605 JLS (AHG)

The Court agrees with the MKZ Defendants. Given Plaintiff's apparent intention to refile her claims against them, it cannot be said that Plaintiff's voluntary dismissal was the result of her realizing her objectives in the litigation. *See, e.g.*, *Primacy Eng'g, Inc. v. ITE, Inc.*, No. 318CV01781GPCMDD, 2019 WL 2059668, at *7–8 (S.D. Cal. May 9, 2019) ("An intent to refile the litigation in other jurisdictions belies a claim that [the voluntarily dismissing plaintiff] was able to substantially achieve its litigation objectives in this suit . . . . [T]he facts at hand only reaffirm the Court's prior determination that [the plaintiff] did not achieve its objectives in litigation . . . . [The plaintiff therefore] failed to rebut the presumption that Defendants were the prevailing parties."). The Court therefore cannot conclude that Plaintiff has rebutted the presumption that the MKZ Defendants were the prevailing party for purposes of Section 425.16. Accordingly, the Court concludes that the MKZ Defendants are the prevailing parties on their anti-SLAPP Motion.

### 2. The S&G Defendants

Similarly, the S&G Defendants contend that Plaintiff's claims against them all derive from litigation-related or privileged activity, *see* ECF No. 96 at 5–8, and that Plaintiff "dismiss[ed] . . . claims *she kn[e]w[ we]re legally untenable*, while threatening further frivolous litigation." *Id.* at 4 (emphasis in original). As with the MKZ Defendants, *see supra* Section III.A.1, the Court concludes that Plaintiff has failed to rebut the presumption that the MKZ Defendants were the prevailing party for purposes of Section 425.16. *See, e.g.*, *Primacy Eng'g*, 2019 WL 2059668, at *7–8. Accordingly, the Court concludes that the S&G Defendants are the prevailing parties on their anti-SLAPP Motion.

### B. Fee Determination

"Although an award of attorney fees is mandatory under the anti-SLAPP statute, the amount of such fees is discretionary." *Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008) (citing *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002)). "The reasonableness of attorney fees is within the discretion of the trial court, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel and the amount of

19-CV-605 JLS (AHG)

time involved." *Id.* at 1184–85 (quoting *Wilkerson v. Sullivan*, 99 Cal. App. 4th 443, 448 (2002). "The [c]ourt must have 'substantial evidence' to support the fee award." *Id.* at 1185 (citing *Macias v. Hartwell*, 55 Cal. App. 4th 669, 676 (1997)). "The party petitioning for attorneys' fees necessarily bears the burden of persuasion on the elements of that claim," *id.* (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305–06 (9th Cir. 1994)), and "[a] reasonable fee is determined by reference to 'the 'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate.'" *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)).

### 1. The MKZ Defendants

The MKZ Defendants seek fees in the amount of $16,312.00, *see* ECF No. 49-1 at 1; *see also id.* at 9–11, representing 34.2 hours billed by partner Daniel Agle at a rate of $260.00 per hour and 37.1 hours billed by associate Brittany Vojak at a rate of $200.00 per hour. *See generally* ECF No. 49-2 Ex. 3. The MKZ Defendants note that they have excluded the fees incurred in preparing the portion of their motion brought under Rule 12(b)(6), *see* ECF No. 49-1 at 9 n.3, and that they included "12.5 hours for the anticipated review and analysis of any opposition to this motion, the preparation of a reply brief, and attendance at the hearing on this motion." *See id.* at 10 n.4. Plaintiff fails to contest the reasonableness of the rates or hours claims by the MKZ Defendants' counsel, *see generally* ECF No. 78-1, thereby conceding the issue. *See* ECF No. 92 at 10; *see also, e.g.*, *Monster Energy Co. v. Sainte Claire*, No. EDCV171111PASKX, 2017 WL 8220421, at *4 (C.D. Cal. Oct. 13, 2017) ("The Respondent had an opportunity to file an opposition to [the plaintiff]'s Motion, in which it could have challenged the hours billed. It has failed to do so.").

After adjusting for the vacated hearing, *see* ECF No. 97, the Court concludes that the MKZ Defendants' requested fee is reasonable. The Court therefore **AWARDS** the MKZ Defendants fees in the amount of $15,792.00, representing 32.2 hours billed by Mr. Agle at $260.00 per hour and 37.1 hours billed by Ms. Vojak at $200.00 per hour.

///

## 2. *The S&G Defendants*

The S&G Defendants seek fees in the amount of $23,093.00, *see* ECF No. 54 at 7, comprised of 6.2 hours billed by Kenneth Feldman at an hourly rate of $490, 38.4 hours billed by Tim Vanden Heuvel at an hourly rate of $475, and 6.6 hours billed by Erin Peikes at an hourly rate of $275. *See id.* at 15. Plaintiff does not object to the number of hours, *see generally* ECF No. 78-1, although she does contend that "$475 to $490 per hour seems excessive."[12] *See* ECF No. 78-2 ¶ 105.

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[T]he relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.2d 496, 500 (9th Cir. 1997)). "[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *Id.* at 980 (second and third alterations in original) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). The Court may also consider cases setting reasonable rates during the time period in which the fees in the present action were incurred, *see Camacho*, 523 F.3d 973, 981 (9th Cir. 2008) (citing *Bell v. Clackamas Cty.*, 341 F.3d 858, 869 (9th Cir. 2003)), which—in this case—is between July and October 2019. *See* ECF Nos. 7, 8, 12, 13, 92, 96; *see also Bell*, 341 F.3d at 869 (holding that district court abused its discretion in applying "market rates in effect more than two years *before* the work was performed") (emphasis in original).

Here, the S&G Defendants rely on cases and fee tables outside of this District to establish the reasonableness of their requested rates, *see* ECF No. 54 at 13–15; nonetheless,

---

[12] Plaintiff does not appear to contest Ms. Peike's hourly rate of $275.00.

the Court concludes that the requested rates are reasonable for attorneys of comparable skill, experience, and reputation within this District. Mr. Vanden Heuvel has thirty years of experience litigating in California, including substantial experience in malpractice lawsuits and anti-SLAPP motion practice. *See* ECF No. 54-1 ¶ 6. Mr. Feldman also has over thirty years of experience litigating in Southern California, and is a California Certified Specialist in legal malpractice and is the current chair of the California legal malpractice advisory commission. *See id.* ¶ 7. Mr. Vanden Heuvel's hourly rate of $475 and Mr. Feldman's hourly rate of $490 are reasonable given their considerable experience and the prevailing rates in this District. *See, e.g.*, *Lewis v. Cty. of San Diego*, No. 13-CV-02818-H-JMA, 2017 WL 6326972, at *11 (S.D. Cal. Dec. 11, 2017) (approving hourly rate of $600 for attorney with twenty-five years' experience), *aff'd*, No. 17-56346, 2019 WL 6703254 (9th Cir. Dec. 9, 2019); *Lobaton v. City of San Diego*, No. 3:15-CV-1416-GPC-DHB, 2017 WL 3622248, at *3 (S.D. Cal. Aug. 22, 2017) (approving hourly rate of $825 for attorney with thirty-six years' experience).

This brings the Court to the reasonableness of the hours expended. Although Plaintiff does not object to the hours claimed by the S&G Defendants, "[t]he district court . . . should exclude . . . hours that were not 'reasonably expended'" and "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "[T]he [opposing party] bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath v. Cty. of Nev.*, 67 F.3d 248, 255 (9th Cir. 1995) (citing *Blum*, 465 U.S. at 892 n.5; *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995)).

Here, the S&G Defendants contend that Mr. Vanden Heuvel spend 12.7 hours and Mr. Feldman spent 1.4 hours "[i]nvestigat[ing] and [a]nalyz[ing] [e]vidence and [i]ssues for anti-SLAPP motion, including litigation files and court documents"; that Mr. Vanden Heuvel spent 7.2 hours "[a]nalyz[ing] [l]elgal [a]uthorities for anti-SLAPP motion"; that Mr. Vanden Heuvel spent 16.4 hours and Mr. Feldman spent 4.8 hours "[d]raft[ing] and [p]repar[ing] anti-SLAPP Motion, [s]upporting [d]eclarations, and Request for Judicial

the Court concludes that the requested rates are reasonable for attorneys of comparable skill, experience, and reputation within this District. Mr. Vanden Heuvel has thirty years of experience litigating in California, including substantial experience in malpractice lawsuits and anti-SLAPP motion practice. *See* ECF No. 54-1 ¶ 6. Mr. Feldman also has over thirty years of experience litigating in Southern California, and is a California Certified Specialist in legal malpractice and is the current chair of the California legal malpractice advisory commission. *See id.* ¶ 7. Mr. Vanden Heuvel's hourly rate of $475 and Mr. Feldman's hourly rate of $490 are reasonable given their considerable experience and the prevailing rates in this District. *See, e.g.*, *Lewis v. Cty. of San Diego*, No. 13-CV-02818-H-JMA, 2017 WL 6326972, at *11 (S.D. Cal. Dec. 11, 2017) (approving hourly rate of $600 for attorney with twenty-five years' experience), *aff'd*, No. 17-56346, 2019 WL 6703254 (9th Cir. Dec. 9, 2019); *Lobaton v. City of San Diego*, No. 3:15-CV-1416-GPC-DHB, 2017 WL 3622248, at *3 (S.D. Cal. Aug. 22, 2017) (approving hourly rate of $825 for attorney with thirty-six years' experience).

This brings the Court to the reasonableness of the hours expended. Although Plaintiff does not object to the hours claimed by the S&G Defendants, "[t]he district court . . . should exclude . . . hours that were not 'reasonably expended'" and "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "[T]he [opposing party] bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath v. Cty. of Nev.*, 67 F.3d 248, 255 (9th Cir. 1995) (citing *Blum*, 465 U.S. at 892 n.5; *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995)).

Here, the S&G Defendants contend that Mr. Vanden Heuvel spend 12.7 hours and Mr. Feldman spent 1.4 hours "[i]nvestigat[ing] and [a]nalyz[ing] [e]vidence and [i]ssues for anti-SLAPP motion, including litigation files and court documents"; that Mr. Vanden Heuvel spent 7.2 hours "[a]nalyz[ing] [l]elgal [a]uthorities for anti-SLAPP motion"; that Mr. Vanden Heuvel spent 16.4 hours and Mr. Feldman spent 4.8 hours "[d]raft[ing] and [p]repar[ing] anti-SLAPP Motion, [s]upporting [d]eclarations, and Request for Judicial

the Court concludes that the requested rates are reasonable for attorneys of comparable skill, experience, and reputation within this District. Mr. Vanden Heuvel has thirty years of experience litigating in California, including substantial experience in malpractice lawsuits and anti-SLAPP motion practice. *See* ECF No. 54-1 ¶ 6. Mr. Feldman also has over thirty years of experience litigating in Southern California, and is a California Certified Specialist in legal malpractice and is the current chair of the California legal malpractice advisory commission. *See id.* ¶ 7. Mr. Vanden Heuvel's hourly rate of $475 and Mr. Feldman's hourly rate of $490 are reasonable given their considerable experience and the prevailing rates in this District. *See, e.g.*, *Lewis v. Cty. of San Diego*, No. 13-CV-02818-H-JMA, 2017 WL 6326972, at *11 (S.D. Cal. Dec. 11, 2017) (approving hourly rate of $600 for attorney with twenty-five years' experience), *aff'd*, No. 17-56346, 2019 WL 6703254 (9th Cir. Dec. 9, 2019); *Lobaton v. City of San Diego*, No. 3:15-CV-1416-GPC-DHB, 2017 WL 3622248, at *3 (S.D. Cal. Aug. 22, 2017) (approving hourly rate of $825 for attorney with thirty-six years' experience).

This brings the Court to the reasonableness of the hours expended. Although Plaintiff does not object to the hours claimed by the S&G Defendants, "[t]he district court . . . should exclude . . . hours that were not 'reasonably expended'" and "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "[T]he [opposing party] bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath v. Cty. of Nev.*, 67 F.3d 248, 255 (9th Cir. 1995) (citing *Blum*, 465 U.S. at 892 n.5; *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995)).

Here, the S&G Defendants contend that Mr. Vanden Heuvel spend 12.7 hours and Mr. Feldman spent 1.4 hours "[i]nvestigat[ing] and [a]nalyz[ing] [e]vidence and [i]ssues for anti-SLAPP motion, including litigation files and court documents"; that Mr. Vanden Heuvel spent 7.2 hours "[a]nalyz[ing] [l]elgal [a]uthorities for anti-SLAPP motion"; that Mr. Vanden Heuvel spent 16.4 hours and Mr. Feldman spent 4.8 hours "[d]raft[ing] and [p]repar[ing] anti-SLAPP Motion, [s]upporting [d]eclarations, and Request for Judicial

51

19-CV-605 JLS (AHG)

Notice"; that Mr. Vanden Heuvel spent 2.1 hours on "[t]elephone calls and correspondence re issues, evidence[,] and support for anti-SLAPP motion"; and Ms. Peike spent 6.6 hours "[p]repar[ing] Fee Motion, [s]upporting [d]ecalaration, and [e]xhibits." *See* ECF No. 54 at 13. Plaintiff does not contest the reasonableness of the hours claimed by the S&G Defendants. *See generally* ECF No. 78-1. Although the hours expended appear reasonable, fees for clerical tasks—including preparing exhibits—cannot be recovered. *See, e.g.*, *Arana v. Monterey Fin. Servs. Inc.*, No. 15CV2262-LAB (BGS), 2016 WL 1324269, at *3 (S.D. Cal. Apr. 5, 2016) (citing *Anish v. Nat'l Sec. Corp.*, No. 10-80330-Civ, 2014 WL 5034720, at *3 (S.D. Fla. July 3, 2014)). The Court therefore reduces the hours billed by Ms. Peike by 0.3 to account for preparation of exhibits in support of the S&G Fee Motion.

Accordingly, the Court **AWARDS** the S&G Defendants fees in the amount of $23,010.50, representing 38.4 hours billed by Mr. Vanden Heuvel at $475.00 per hour, 6.2 hours billed by Mr. Feldman at $490.00 per hour, and 6.3 hours billed by Ms. Peikes at $275.00 per hour.

## DEFAULT MOTION

Claiming that Defendant Kramer, as an individual, failed to "file a timely Motion to Dismiss or other response to the First Amended Complaint," Plaintiff requests that the Court order the Clerk of Court to enter default against Defendant Kramer in her individual capacity. *See* ECF No. 60-2 at 1. Defendant Kramer responds that she "timely moved to dismiss on July 30, 2019, noting that she was seeking dismissal of all claims asserted against her as both an individual and as trustee of her own trust." *See* ECF No. 80 at 1. Plaintiff insists on reply that "the Motion to Dismiss filed on July 30, 2019 was filed by Linda R. Kramer in only one capacity," *see* ECF No. 84 at 3, and that "[t]he Clerk was not allowed to analyze the sufficiency of the pleadings by looking at a footnote on page 6 to decide for whom the document was filed." *See id.* at 6.

Despite what Parties appeared on the docket or which Parties counsel indicated through CM/ECF he was filing on behalf at the time of filing, the Kramer Motion is clear

that it seeks dismissal of the claims against Defendant Kramer both as an individual and as co-trustee of the L&E Trust. For example, the Notice indicates that "defendants Linda 'Lynn' R. Kramer and Erik Von Pressentin Hunsaker will move this Court for an order dismissing all causes of action against defendants pursuant to Fed. R. Civ. P. 12(b) for failure to state a claim." *See* ECF No. 19 at 1. Further, the Memorandum explicitly notes that "Lynn Kramer was named as a defendant in both her capacity as an individual and as trustee of the Lynn and Erik's Trust, and is seeking dismissal as to all claims." *See* ECF No. 19-1 at 6 n.3. Because the Court concludes that the Clerk did not err in refusing to enter default against Defendant Kramer in her individual capacity,[13] the Court **DENIES** Plaintiff's Default Motion.

## SANCTIONS MOTION

Pursuant to Federal Rule of Civil Procedure 11, Plaintiff seeks reimbursement for $914 in costs and for Defendant Kramer's counsel, Keith M. Cochran and Fitzgerald Knaier LLP, to pay $60,000 to the Court for filing an "objectively baseless" opposition to her request for the Clerk to enter default against Defendant Kramer in her individual capacity for the "improper purpose [of] increas[ing] costs to Plaintiff, who cannot handle this kind of legal trickery emotionally." *See* ECF No. 56 at 2; ECF No. 56-2 at 1. Because the Court concludes that the Kramer Motion was filed on behalf of Defendant Kramer in her individual capacity, *see supra*, there was nothing improper about Mr. Cochran opposing Plaintiff's request for the Clerk to enter default against his client. Consequently, assuming Plaintiff's withdrawal and refiling of the Sanctions Motion rendered it timely, *see* ECF No. 81 at 2; ECF No. 85 at 3, the Court **DENIES** Plaintiff's Sanctions Motion.

/ / /

/ / /

---

[13] The Court cautions Plaintiff against impugning the Clerk or other staff of this Court or District based on gratuitous speculation regarding relationships of favoritism toward litigants or their counsel. *See, e.g.*, ECF No. 85 at 2, 4. Such accusations should not be made lightly and, absent evidence supporting such claims, the Court will not countenance them.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** the Motions to Dismiss (ECF Nos. 18, 19, 37, 40), **DENIES** the Undertaking Motion (ECF No. 41), **GRANTS** the Fee Motions (ECF Nos. 49, 54), **DENIES** Plaintiff's Sanctions Motion (ECF No. 56), and **DENIES** Plaintiff's Default Motion (ECF No. 60). Accordingly, the Court **AWARDS** the MKZ Defendants attorneys' fees in the amount of $15,792.00 and the S&G Defendants attorneys' fees in the amount of $23,010.50. Plaintiff **MAY FILE** an amended complaint within <u>forty-five (45) days</u> of the electronic docketing of this Order. *Should Plaintiff fail timely to file an amended complaint, this action shall remain closed without further Order of the Court.*

**IT IS SO ORDERED.**

Dated: March 23, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge