1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA LYNN HAMMETT,<br><br>                                      Plaintiff,<br><br>v.<br><br>MARY E. SHERMAN, et al.,<br><br>                                      Defendants. | Case No.:  19-CV-605 TWR (LL)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO BIFURCATE AND TRANSFER VENUE**<br><br>**(ECF No. 223)** |

Plaintiff Laura Hammett has filed a Motion to Bifurcate and Transfer Venue. ("Mot. to Bifurcate," ECF No. 223.)  Defendants oppose. ("Opp'n," ECF No. 225), and Plaintiff has replied.  ("Reply," ECF No. 233.)  For the reasons set forth below, the Court **DENIES** the motion.

## BACKGROUND

This case stems from personal and professional conflicts among the shareholders of Silver Strand Plaza, LLC ("SSP"), a family-owned, California-based corporation. (Second Am. Compl., ("SAC," ECF No. 145) ¶ 3.)  Plaintiff's parents, Norman and "Sandi" Kramer, established SSP in order to distribute their wealth among their children. (SAC ¶ 37.)  Plaintiff and several Defendants, including Sherman, Dennis, and Kramer, are siblings, (*id.* ¶ 17), each of whom was given an equal stake in SSP.  (*See id.* ¶ 64.) Sherman

was the manager of the corporation. (*Id.* ¶¶ 34–35.)  SSP owned as its primary asset a shopping center in Imperial Beach, California. (*Id.* ¶ 131.)

Plaintiff and her siblings did not get along.  According to Plaintiff, Sherman and the other stockholders were mismanaging the corporation in order to "strip" her of "her fair share." (*Id.* ¶ 77.)  Specifically, Sherman was paying herself a managerial fee that was "almost three times" what Plaintiff felt was reasonable. (*Id.* ¶ 102.)  Further, Sherman had been leasing properties in the shopping center at rates far below market value. (*Id.* ¶ 104.) Lastly, Plaintiff felt that the other members of SSP were trying to conceal the underperformance of the shopping center and the overpayment of management fees. (*Id.* ¶¶ 102–03, 113.)  In 2014, Plaintiff sought an accounting of the corporation's finances, but that request was denied.  (*Id.* ¶¶ 128, 183.)  When Plaintiff suggested that she might sell her portion of SSP to the other members, SSP's lawyer rebuffed her with a low offer. (*Id.* ¶ 116.)  Plaintiff believes that the members were acting with the aim of "pay[ing] Hammett less than her fair share of the distributions."  (*Id.* ¶ 124.)

In 2016, the members agreed to sell the shopping center. Though the property sold for $10.2 million, (*id.* ¶ 131), Plaintiff felt that the members had maliciously attempted to undervalue the property, initially asking her to agree on a "bottom sales price of $7.9 million."  (*Id.* ¶ 130.)  Once the deal was completed, however, Sherman withheld $50,000 of Plaintiff's portion as a "defense fund," which she eventually released fourteen days later. (*Id.* ¶ 273.)  Additionally, Plaintiff argues that Sherman was required to dissolve SSP and distribute its remaining assets once the shopping center had been sold.  (*See id.* ¶ 196.)  But the corporation was never dissolved, and Plaintiff never received her distribution.  (*Id.*) Believing that the other members wanted to defraud her and were predominately "driven by… animus," (*id.* ¶ 141), Plaintiff turned to the courts.

Plaintiff sued in May 2019 based on Defendants' mismanagement of SSP and certain offensive statements made by her sibling, Dennis.  In her first cause of action, Plaintiff alleged that Sherman breached her fiduciary duties, primarily by withholding Plaintiff's share of the proceeds from the sale of the shopping center.  (First Am. Compl. ("FAC,"

ECF No. 5) ¶¶ 202–13.)  Plaintiff also claimed that the other members aided and abetted this breach of fiduciary duty. (*Id.* ¶¶ 214–41.)  In her third cause of action, Plaintiff claimed that Dennis had defamed her, (*id.* ¶¶ 242–56), by making statements suggesting that Plaintiff possessed "illegally obtained porn," (*id.* ¶ 244), and was running a "'porn business.'" (*Id.* ¶ 245.)  In the fourth cause of action, Plaintiff claimed that Sherman conspired with Dennis in her defamation.  (*Id.* ¶¶ 257–63.)  Plaintiff also alleged that Sherman and the other members had unlawfully converted her shares in the corporation and used these funds to hire SSP's lawyer, also a Defendant in the First Amended Complaint, to represent them when Plaintiff offered to sell her shares.  (*Id.* ¶¶ 264–83.) Finally, Plaintiff claimed that Sherman used company funds to pay for personal legal representation between 2014 and 2018.  (*Id.* ¶ 271.)

In response, the Defendants moved to dismiss Plaintiff's complaint, (ECF Nos. 18, 19, 37, 40, 41, 49, 54, 56, 60), and the Court granted their motions.  In doing so, Judge Sammartino made several legal determinations, including that Arkansas law applied to Plaintiff's invasion of privacy and defamation claims against Defendants Dennis and Sherman. (ECF No. 111 at 21, 39.)  Plaintiff was granted leave to amend.  (*Id.* at 54.)

Shortly afterward, Plaintiff filed her Second Amended Complaint, where she reasserted multiple causes of action from the original complaint, including breach of fiduciary duty and the defamation claim against Defendant Dennis.  (SAC ¶¶ 284, 301, 409.)  Plaintiff also brought new causes of action, such as the breach of an implied covenant of good faith and unjust enrichment.  (*Id.* ¶¶ 326, 452.)  Further, Plaintiff brought a claim of invasion of privacy against Dennis for statements posted on a Facebook Group for members of Plaintiff's Arkansas community.  (*Id.* ¶ 431.)  Lastly, she asserted defamation and invasion of privacy claims against Defendant Sherman for statements made to other Defendants by email.  (*Id.* ¶¶ 358, 390.)

The Defendants have again filed motions to dismiss, all of which are pending before the Court.  (ECF Nos. 162, 164, 166, 167.)  Plaintiff has also moved to disqualify Judge Sammartino.  (ECF No. 153 at 2–3.)  When the action was transferred to this Court in

19-CV-605 TWR (LL)

September 2020, (ECF No. 173), the motion to disqualify was denied as moot. (ECF No. 174.)  Still, Plaintiff has expressed a desire to file a claim against the District. (Mot. to Bifurcate at 3.)

In February 2021, Plaintiff moved to bifurcate her complaint into two separate actions and transfer them to two different districts.  (*See* Mot. to Bifurcate.)  Plaintiff wants to separate the claims against Defendant Dennis, which include defamation and invasion of privacy claims, and transfer those to the Eastern District of Arkansas.  (*Id.* at 2, 6.) Plaintiff then seeks to transfer the remainder of her claims to the Central District of California. (*Id.* at 2.)  As for the transfer to Arkansas, Plaintiff suggests that certain witnesses live there and would be inconvenienced by travel to California.  (*Id.* at 9–10.) As for transferring the remaining claims to the Central District, Plaintiff suggests that the COVID-19 pandemic has made it hard to reach possible witnesses in San Diego and that she faces bias due to her prospective suit against Judge Sammartino and the Southern District.  (*Id.* at 3, 4.)

Defendants oppose. (*See* Opp'n.)  They argue that a transfer is not warranted, mainly because Plaintiff has not shown a change of circumstances.  Further, they disagree with Plaintiff that the Southern District has become an inconvenient forum and suggest that the Central District would not be more convenient for the relevant parties and witnesses.  (*Id.* at 2–5.)  Finally, Defendants argue that Plaintiff has not provided enough information on the potential witnesses in Arkansas, or their testimony, to justify a transfer on that basis. (*Id.*)

## LEGAL STANDARD

To begin, Plaintiff appears to have confused a motion to bifurcate with a motion to sever.  "Bifurcation" creates two or more separate trials within one action and is done under Fed. R. Civ. P. 42; Severance, however, separates one case into two or more discrete actions and is done under Fed. R. Civ. P. 21.  *See Anticancer, Inc. v. Pfizer Inc.*, No. 11CV107 JLS (RBB), 2012 WL 1019796, at *2 (S.D. Cal. Mar. 26, 2012). Bifurcated claims remain part of "the same case," *Lucent Technologies, Inc. v. Gateway, Inc.*, Nos.

4

02–CV–2060–B (CAB), 03–CV–0699–B (CAB), 03–CV–1108–B (CAB), 2008 WL 4934061, at *1 (S.D. Cal. Nov. 17, 2008), while severance creates "entirely new and independent case[s]." *Herklotz v. Parkinson*, 848 F.3d 894, 898 (9th Cir. 2017).

Since Plaintiff hopes to transfer the two resulting actions, the Court construes her motion as a request for severance rather than bifurcation.  In cases like this, where a party seeks to transfer two or more causes of action to different venues, the original suit must first be severed.  *See Munns v. Kerry*, 782 F.3d 402, 415 (9th Cir. 2015) (directing the district court to sever claims before transferring them) (citing *FDIC v. McGlamery,* 74 F.3d 218, 222 (10th Cir.1996)); *Pamplona ex rel. Pamplona v. Hernandez*, No. 08cv2205-IEG-BLM, 2009 WL 578578, at *3 (S.D. Cal. Mar. 5, 2009) (applying the Tenth Circuit's pre-transfer severance requirement.).  So here, the Court first addresses whether Plaintiff's complaint may be properly severed.  *See Pamplona ex rel. Pamplona*, 2009 WL at *3 ("[T]he Court analyzes whether to sever movants from the action before discussing transfer under 28 U.S.C. § 1631.").

Courts have broad discretion in deciding whether to sever an action.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000).  In exercising this discretion, the court considers: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Anticancer, Inc.*, 2012 WL at *1 (quoting *Morris v. Northrop Grumman Corp.*, 37 F.Supp.2d 556, 580 (E.D.N.Y.1999)).  Behind this balancing test lie basic principles of "fairness and judicial economy and [the avoidance of] prejudice, delay or expense." *Apple Inc. v. Wi-LAN Inc.*, No. C 14-2838, 2014 WL 4477362, at *3 (N.D. Cal. Sept. 11, 2014).  "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties." *Viasat, Inc. v. Space Systems/loral, Inc.*, No. 12-CV-00260-H-WVG, 2012 WL 12844702, at *2 (S.D. Cal. Aug. 23, 2012).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ANALYSIS

Considering the relevant factors above, severance is not appropriate in this case.  The claims against Dennis are part of the same events that give rise to some of the other causes of action, namely the defamation and invasion of privacy claims against Sherman.  Accordingly, these claims involve common questions of law and fact.  Moreover, maintaining the claims against Dennis as part of one action would not prove inconvenient or prejudicial to the relevant parties and witnesses.

### A. The Claims to be Severed Are Part of the Same Transaction and Occurrence and Present Common Questions of Law or Fact

"The 'same transaction' requirement" of Rules 20 and 21 "refers to similarity in the factual background" of the claims.  *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  Here, the defamation and invasion of privacy claims against Defendant Dennis have a common factual background with the rest of the action.  For example, the defamatory statement made by Dennis explicitly refers to the ongoing lawsuit between her and Plaintiff: "Lay off the lawsuit thing. You will likely have more 'lawsuit' then [sic] you can handle...."  (SAC ¶ 436.)  This statement was made to other defendants in the same suit, Kramer and Sherman, as well as one of the lawyers for SSP.  (*Id.* ¶ 418.)   Plaintiff herself recognizes this link between the defamation and the ongoing suit, arguing that the defamatory statement affected "[her] business relationship with the other Members of SSP… and encouraged them to continue breaching their fiduciary duties."  (*Id.* ¶ 425.)

As for the invasion of privacy claim against Dennis, it does appear factually distinct from the rest of the action because the "recipients" of the offensive statement are not parties to this suit but rather members of a Facebook page for Plaintiff's Arkansas community.  (*Id.* ¶ 446; Mot. to Bifurcate at 6.)  However, it is unclear who saw or engaged with the tortious posts, and Plaintiff recognizes that Dennis "did not know the people she was communicating with." (Mot. to Bifurcate at 9.)  Thus, it seems that these individuals were targeted purely because they lived in Plaintiff's town and not because they were involved in any separate disagreement between Dennis and Plaintiff.  Relevant here, Plaintiff's only

substantive allegation about the invasive statement was that it was "similar" in nature to the defamatory statements. (SAC ¶ 446.) Absent further allegations about the statement and its recipients, the factual background of this claim appears similar to the claims against Sherman.

In addition to involving the same transaction and occurrence, the Arkansas and California "claims present some common questions of law or fact." *Anticancer, Inc.*, 2012 WL at *1 (quoting *Morris*, 37 F.Supp.2d at 580). For example, Plaintiff will likely have to show similar proof of damages for the invasion of privacy claims against both Dennis and Sherman. *See, e.g.*, *Thomas v. Restaurant*, No. 1:15-cv-01113-DAD-SKO, 2015 WL 9583029, at *4 (E.D. Cal. Dec. 31, 2015). In the amended complaint, Plaintiff suggests that both alleged invasions of privacy took a toll on her mental health and resulted in her continuing therapy. (SAC ¶¶ 408, 450.) Unless Plaintiff can differentiate between the mental anguish caused by Sherman's statements and that caused by Dennis' statements, the same proof will be relevant to both claims.

The defamation claims may also rely on the same proof. "[T]he elements of a defamation claim in Arkansas are: (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages." *Gibson v. Regions Fin. Corp.*, No. 4:05CV01922 JLH, 2008 WL 110917, at *5 (E.D. Ark. Jan. 9, 2008) (quoting *Northport Health Servs., Inc. v. Owens*, 356 Ark. 630, 641 (2004) (internal quotation marks omitted). Here, and under the second prong, the extended series of events that followed SSP's founding may be necessary to interpret Sherman's alleged reference to Plaintiff as an "ungrateful creature who has sent hundreds of accusatory emails over the past 12 years with no basis, since our business flourished…." (SAC ¶ 366.) Similarly, the factual background of the ongoing lawsuit is critical to evaluating Dennis' alleged statement that Plaintiff should "[l]ay off the lawsuit thing," and that she "would not have time for this nonsense" if she were not "so busy looking at [her] illegally obtained porn." (*Id.* ¶ 436.) And if Plaintiff attempts to show

damages under the sixth prong, she might have to point to the fact that both Defendants' statements were "substantial factor[s] in causing harm to Plaintiff's business relationship with the other Members of SSP." (*Id.* ¶ 388.)

Finally, there are also common questions of law. As noted above, Judge Sammartino found that Arkansas law applies to the defamation claims against both Dennis and Sherman (ECF No. 111 at 21, 39.)[1] So even if the claims against Dennis were severed, this Court would have to apply Arkansas law regardless.

## B. Severance in this Case Would Neither Promote Judicial Economy, Nor Avoid Prejudice

The remaining factors also weigh against severance. First, transferring this case to Arkansas would not promote judicial economy. Instead, severance and transfer would likely result in "substantial overlap in discovery" in determining the legal, professional, and personal context of the defamatory statements made by Dennis and Sherman. *Demison v. Walgreen Co. Inc.*, No. 14-CV-0306-BTM-JLB, 2014 WL 12508595, at *3 (S.D. Cal. July 24, 2014). The Arkansas court would be required to make "repetitive inquiries" into the extensive and complicated factual record. *Faur Abdallah Fraihat v. United States Immigration & Customs Enforcement*, No. EDCV 19-1546 JGB (SHKx), 2020 WL 2759848, at *13 (C.D. Cal. Apr. 15, 2020). Moreover, severance would cause repeated effort and cost on the part of Defendant Dennis and the Plaintiff, both of whom have already filed multiple motions before this Court. *See, e.g., CSAA Insurance Exchange v. Broan-Nutone LLC*, No. 2:16-cv-02929-TLN-AC, 2017 WL 3840261 at *3-4 (E.D. Cal. Sept. 1, 2017) (recognizing that severance would "increase the costs of litigating the claims."). For example, Dennis has already filed two motions to dismiss the fiduciary duty

---

[1] The Court finds that this determination is the "law of the case" and should be followed. *See Musacchio v. United States*, 136 S. Ct. 709, 716, 193 L. Ed. 2d 639 (2016) ("The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)).

and defamation claims.  (ECF Nos. 18, 162.)  Severance would only cause duplicative effort for both parties.

Second, keeping the claims against Dennis as part of the original action would not result in "substantial prejudice and jury confusion" to either party.  *Demison v. Walgreen Co., Inc.*, No.: 14-CV-0306-BTM-JLB, 2014 WL 12508595, at *3 (S.D. Cal. July 24, 2014).  Because this case involves one Plaintiff and a limited number of defendants, the combination of individuals and claims would not confuse the jury.  *See Knight v. City of Sacramento Police Dept.*, No. 2:12–CV–0346 JAM–KJN, 2014 WL 1883962, at *2 (E.D. Cal. May 12, 2014) (rejecting defendant's request for severance in a case involving nine plaintiffs and multiple defendants).  Additionally, Plaintiff's claims would not require a jury to apply multiple legal standards simultaneously.  *Cf. Coleman*, 232 F.3d at 1296 (affirming severance order when "plaintiffs had worked for Quaker in six different states, and the jury would have had to evaluate their state law claims in light of the different laws of each state"); *Goodwin v. Citywide Home Loans, Inc.*, No. SACV 14-866-JLS (JCGx), 2014 WL 5327191, at *10 (C.D. Cal. Oct. 17, 2014) (allowing severance when jury would be required to apply two different standards for employment exemption in a representative action on behalf of many employees).

Third, the potential inconvenience to certain unidentified witnesses does not weigh in favor of severance.  Plaintiff argues that the Court should sever and transfer the claims against Dennis because witnesses to Dennis' invasive Facebook posts live in Arkansas and "would certainly be inconvenienced to travel to California."  (Mot. to Bifurcate at 9–10.)  According to Plaintiff, these witnesses "have livestock that they tend to and rarely, if ever travel."  (*Id.*)  But courts are skeptical of "vague generalizations" as to the convenience of witnesses.  *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1093 (N.D. Cal. 2002) (rejecting a motion for transfer when the moving party had only stated "that their witnesses reside in Alabama and Korea."); *see Eclipse IP LLC v. Volkswagen Group of Am., Inc.*, No. EDCV 12-2087 PSG (SPx), 2013 U.S. Dist. LEXIS 189148, at *8. (C.D. Cal. May 10, 2013) (rejecting transfer when plaintiff had merely alleged that there "appear

to be" witnesses in requested transferee forum).  And while Plaintiff argues that some of these "witnesses" had spoken to her about the Facebook posts, (SAC ¶ 446), she has not identified which group-members were witnesses to the tortious statements, or what their testimony might be.[2]  *See, e.g.*, *Florens Container*, 245 F.Supp.2d at 1093 (citing *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)) (recognizing an "obligat[ion] to identify the key witnesses to be called and to present a generalized statement of what their testimony would include.").  Plaintiff also emphasizes that her husband, therapist, and doctors are in Arkansas, and that they are important witnesses to "the effect the [defamatory] communication had on [her]."  (Mot. to Bifurcate at 10.)  But as Defendants suggest, these witnesses seem equally relevant to the defamation and invasion of privacy claims, both of which will remain in California.  (Reply at 4.)  And the fact that Plaintiff initially brought her claims before this Court suggests that those witnesses are not unable or unwilling to testify in California.

Lastly, other potential witnesses and parties would not benefit from severance. Defendants Kramer and Sherman, to whom Dennis allegedly sent the defamatory statement, (SAC ¶ 418), are both California residents.  (*Id.* ¶¶ 5, 8.)  Also, Plaintiff and Defendant Dennis are already traveling to California for this case.  Keeping the entire action here would not prove inconvenient to these potential witnesses.

Based on the analysis above, the relevant factors weigh against severance.  As a result, Plaintiff's motion to sever is **DENIED**.

/ / /

/ / /

/ / /

---

[2] In her First Amended Complaint, Plaintiff referred to the prospective witnesses and described the Facebook group in slightly more detail.  (*See, e.g.*, FAC ¶¶ 151, 155.)  But these allegations did not make it into the Second Amended Complaint and, as such, are not relevant to the present inquiry.  *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) ("[A]n amended complaint supersedes the original complaint and renders [it] without legal effect.")

## C. Motion to Transfer Venue

Since Plaintiff's motion to transfer depended on severance (*see* Mot. to Bifurcate at 2), her transfer request is **DENIED AS MOOT**.  But even considering the merits, Plaintiff's arguments to transfer this case are unconvincing.

Under, 28 U.S.C. § 1404, the court may transfer "any civil action to any other district or division where it might have been brought," based on the "convenience of parties and witnesses, in the interest of justice."  Typically, the "the moving party must establish that (1) venue is proper in the original district; (2) the transferee district is one where the action could have been brought; and (3) the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice."  *Smith v. Cook*, No. 17-CV-00961-AJB-WVG, 2018 WL 4105158, at *2 (S.D. Cal. Aug. 29, 2018).  The court also considers various other factors, including, "(1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations."  *Id.*  The moving party has the burden of showing that "a transfer would allow a case to proceed more conveniently and better serve the interests of justice."  *Id.*

Even assuming that the Eastern District of Arkansas and the Central District of California would be proper venues, Plaintiff's arguments to transfer this case are unconvincing.  Much of the analysis here—such as the convenience of the parties and witnesses—is the same as above and cuts against the transfer of this case.  Further, although Plaintiff claims that the COVID-19 pandemic has affected the availability of witnesses in the Southern District, the Central District does not appear any more convenient.  *See Cutera, Inc. v. Lutronic Aesthetics, Inc.*, No. 2:20-CV-00235-KJM-DB, 2020 WL 4937129, at *3 (E.D. Cal. Aug. 24, 2020) ("the inconvenience imposed by conducting this action in the Eastern District is negligible given the relative geographic proximity of the Eastern and Northern Districts").  Plaintiff also argues that her prospective suit against this District will bias this Court against her (*see* Reply at 5), but that argument does not warrant

a transfer. *Cox*, 2008 WL at *1 (rejecting plaintiff's "contention that the appearance of impropriety require[d] the transfer.").

Additionally, though a plaintiff's "choice of forum is [often] entitled to substantial deference…, such deference is not warranted for a plaintiff's *second* choice of venue." *Qurio Holdings*, 2015 WL at *4. Here, Plaintiff has not alleged sufficient facts to show that she is entitled to change her initial choice of venue. For example, although she notes that some of her "close contacts" have moved away from San Diego, (Reply at 6), purely personal circumstances must be far more serious to justify a transfer. *Cf. Reyes v. Schuttenberg*, No. 13–00028 JMS–BMK, 2013 WL 4239110, at *3 (D. Haw. Aug. 14, 2013) (allowing transfer when plaintiff "file[d] her action in [the transferor] district to preserve her claims, not knowing how long it would take to obtain medical clearance to travel to her residence in Nevada."). Further, Plaintiff also claims that "the Central District is more pro se friendly… [and] would have allowed Plaintiff limited scope representation for the derivative issues." (Mot. to Bifurcate at 10.) But even if Plaintiff might fare better elsewhere, allowing a transfer on that basis would encourage forum shopping. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) ("If there is any indication that [a] plaintiff's choice of forum is the result of forum shopping, [the] plaintiff's choice will be accorded little deference."). At bottom, the relevant considerations weigh against the transfer of this case.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion to Bifurcate and Transfer Venue.

**IT IS SO ORDERED.**

Dated: October 6, 2021

Honorable Todd W. Robinson
United States District Judge

19-CV-605 TWR (LL)