UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA LYNN HAMMETT, an individual,<br><br>                                    Plaintiff,<br><br>v.<br><br>MARY E. SHERMAN, an individual, et al.,<br><br>                                    Defendants. | Case No.:  19-CV-605 TWR (AHG)<br><br>**ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION TO CLARIFY ORDER**<br><br>**(ECF Nos. 162, 164, 166, 167, 215)** |

The several Defendants have moved to dismiss Plaintiff Laura Hammett's Second Amended Complaint.  (ECF Nos. 162, 164, 166, 167.)  Plaintiff opposes.  (ECF No. 194.)  In addition, Plaintiff has filed a Motion to Clarify an Order issued by the Ninth Circuit Court of Appeals.  (ECF No. 215.)  For the reasons set forth below, the Court **GRANTS** the motions to dismiss and **DENIES** the Motion to Clarify Order.

### BACKGROUND

The facts of this case have been recited in a previous order.  (*See* ECF No. 111.)  In short, this case stems from a family dispute about the management of Silver Strand Plaza, LLC, a California limited liability corporation.  (Second Am. Compl. ("SAC") (ECF No. 145) ¶ 3.)  Silver Strand is a limited liability company that owned, as its principal asset, a multi-tenant shopping center in Imperial Beach, California, that was sold in January 2017.

(*Id.*)  Plaintiff Laura Hammet, an Arkansas resident, her sisters, and her extended family members, have ownership interests in Silver Strand and are members of the corporation. (*Id.* ¶¶ 2, 9, 15.)  Defendant Mary E. Sherman, Plaintiff's sister, is the manager of Silver Strand.  (*Id.* ¶ 6.)  Defendant Linda R. Kramer is a member of Silver Strand and the co-trustee, along with her husband, Erik Von Pressintin Hunsaker, of Lynn and Erik's Trust. (*Id.* ¶¶ 9–10.)  Defendant Diane Dennis is a member of Silver Strand.  (*Id.* ¶ 15.)  The other individual Defendants are Ellis Roy Stern, who was counsel to Silver Strand from December 2013 to May 2018, and Patrick C. McGarrigle, who was counsel to Silver Strand from May 2018 to June 2019.  (*Id.* ¶¶ 24–25.)

In 2009, Plaintiff and her siblings entered into an Operating Agreement for Silver Strand.  (*Id.* ¶ 34.)  Although Plaintiff suggested changes to the Operating Agreement, Sherman disagreed, and Plaintiff conceded and signed the Agreement because Sherman had "vastly more power" than her.  (*Id.* ¶¶ 39–40.)  Relevant here, Plaintiff claims that the other members of Silver Strand breached their fiduciary duties and failed to act in good faith and fair dealing towards her.  (*Id.* ¶ 44.)  For example, Plaintiff claims that the other members "engaged in self-dealing and in conflicted and self-interested relationships" and "have allowed the misappropriation and waste of assets of [Silver Strand] by engaging in bad-faith voting schemes" that were meant to harm Plaintiff and not intended to benefit Silver Strand.  (*Id.* ¶ 76.)  Plaintiff has asserted multiple causes of action.  Defendants have moved to dismiss.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," backed by sufficient facts that make the claim "plausible on its face." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  Plausibility requires "more than a sheer possibility

that a defendant has acted unlawfully." *Iqbal*, 566 U.S. at 678. Rather, it demands enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court must accept as true "all factual allegations in the complaint" and "construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). This presumption does not extend to conclusory allegations, "unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## B. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), a district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted). With respect to pro se litigants, this "extreme liberality" is "particularly important," *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000), and courts should dismiss a pro se complaint without leave to amend "only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988).

## ANALYSIS

Defendants have moved to dismiss each of Plaintiff's claims. Their respective motions are addressed below.

## A. Dennis – Motion to Dismiss (ECF No. 162)

Dennis moves to dismiss the following claims asserted against her: (1) defamation; (2) false light invasion of privacy; (3) breach of fiduciary duty; (4) aiding and abetting of fiduciary duty; (5) breach of the covenant of good faith and fair dealing; (6) unjust enrichment; (7) judicial dissolution; (8) receiver, (9) accounting, and (10) constructive trust. The Court addresses each in turn.

/ / /

/ / /

### 1. Defamation

Plaintiff argues that Dennis defamed her through an email that she wrote to Sherman and Kramer. (SAC ¶ 418–23.) In that email, Dennis called Plaintiff a "criminal" and accused Plaintiff of being "so busy looking at [her] illegally obtained porn." (*Id.* ¶ 418.) Dennis also wrote a separate email to Sherman, Kramer, and McGarrigle, accusing Plaintiff of running an "illegal porn business." (*Id.* ¶¶ 419–23.) The statements allegedly harmed "Plaintiff's business relationship with the other Members of [Silver Strand] and McGarrigle" and caused "meanspirited receivers to ridicule [Plaintiff] and encouraged them to continuing breaching their fiduciary duties to [Plaintiff] and conspiring to harm Plaintiff financially." (*Id.* ¶ 428.) Based on those statements, Plaintiff has filed a claim for defamation per se or, in the alternative, defamation per quod.

To begin, the parties dispute whether Arkansas or California law applies here. But the Court has already found that Arkansas law applies to Plaintiff's defamation claims (ECF No. 111 at 17–21), and there appears no compelling reason to revisit that finding. In support of her argument that the Court must apply California law, Plaintiff stresses the same points that she made in the FAC, namely: (1) her ties to California; (2) that the defamatory statements were read by some in California; and (3) that the defamatory statements "emanated from Colorado or New Mexico." (SAC ¶ 413–16.) Since those arguments were already considered and rejected (*see* ECF No. 111 at 19–20), the Court finds that Arkansas law governs the defamation claims.

Applying Arkansas law, then, Plaintiff's claims fall short for the same reasons discussed in the previous Order. "[T]he elements of a defamation claim in Arkansas are: (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages." *Gibson v. Regions Fin. Corp.*, No. 4:05CV01922 JLH, 2008 WL 110917, at *5 (E.D. Ark. Jan. 9, 2008) (internal quotation marks and citation omitted). To begin, Arkansas does not recognize defamation per se as a valid cause of action. *See United Ins. Co. of Am. v.*

*Murphy*, 331 Ark. 364, 370, 961 S.W.2d 752, 756 (1998) ("From the date of this opinion forward, we hold that a plaintiff in a defamation case must prove reputational injury in order to recover damages."). As a result, Plaintiff must show "*actual* damage to her reputation." *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174, at *18 (W.D. Ark. Dec. 24, 2013) (emphasis in original). Plaintiff also asserts defamation per quod, but that does not help. As Dennis notes, there has not been an Arkansas case that involves defamation per quod, and Plaintiff has not cited one. (ECF No. 162-1 at 5.)

At bottom, Plaintiff's defamation claims fall short. According to Plaintiff, Dennis's defamatory statements harmed her business relationships with other Silver Strand Members and encouraged them to breach their fiduciary duties toward Plaintiff and to conspire against her. (SAC ¶ 428.) Those are conclusory allegations that lack specific, factual support. *See Kolbek*, 2013 WL 6816174, at *18 (citing *Suggs v. Stanley,* 324 F.3d 672, 680 (8th Cir.2003) ("When a plaintiff has not pled 'specific facts demonstrating that she has suffered actual damage to her reputation, but has only pled a conclusion to that effect,' dismissal of the defamation claim is appropriate."). Further, and as noted in the previous Order, Plaintiff already had a strained relationship with the recipients of the defamatory emails. (*See* ECF No. 111 at 22.) So, it is unclear how her reputation was harmed due to the challenged statements. Without specific, factual support, Plaintiff's defamation claim cannot survive a motion to dismiss.

### 2. False Light Invasion of Privacy

Plaintiff also brings a claim for false light invasion of privacy against Dennis based on the same email. Here, Plaintiff argues that Arkansas law should apply. (SAC ¶ 394.) The Court agrees. To establish a false light invasion of privacy, Plaintiff must allege that the email was "published to the public at large." *Parkhurst v. Tabor*, No. CIV. 07-2068, 2008 WL 2323928, at *2 (W.D. Ark. June 2, 2008). But because Dennis sent the email to only three individuals, Sherman, Kramer, and McGarrigle, (SAC ¶¶ 436–37), Plaintiff has

failed to allege that the email was published to "the public at large."  As a result, this claim fails.

### 3.  Breach of Fiduciary Duty

Next, Plaintiff claims that Dennis breached her fiduciary duty.  Plaintiff asserts that under Cal. Corp. Code § 17704.09, the members owed a fiduciary duty to Silver Strand and to one another under the Operating Agreement.  (SAC ¶ 306.)  According to Plaintiff, Dennis and the rest of the Members breached this duty because they:  (1) refused to vote against Sherman's actions that were in violation of the Operating Agreement; (2) refused to dissolve Silver Strand; (3) used Silver Strand attorneys Stern and McGarrigle to represent them as individuals and allowed Silver Strand pay for that representation without following the Operating Agreement's procedures; and (4) agreed to buy Plaintiff's shares instead of dissolving Silver Strand and misrepresenting the fair price of those shares.  (*Id.* ¶ 304.)

"To state a claim for breach of fiduciary duty, a plaintiff must plead the existence of a fiduciary relationship, breach of a corresponding duty, and damages."  *New Box Sols., LLC v. Davis*, No. CV 18-5324-RSWL-KSX, 2018 WL 4562764, at *6 (C.D. Cal. Sept. 18, 2018).  Under Cal. Corp. Code § 17704.09, a member of an LLC does not owe a fiduciary duty to other members.  *See* Cal. Corp. Code § 17704.09; *see also Box Sols., LLC*, 2018 WL 4562764, at *6.  To be sure, Plaintiff expresses some confusion over whether Silver Strand is a manager-managed or member-managed company.  (SAC ¶ 38.)  Plaintiff later notes, however, that Silver Strand is "controlled by the Manager" (*id.* ¶ 43), and the Operating Agreement makes this clear.[1]  (ECF No. 145-1 at 11.)  Section 5.1(a) of the Operating Agreement states that "[t]he Company shall be managed by a single manager (the "Manager"), who is Mary E. Sherman."  (*Id.*)  In her Opposition, Plaintiff argues that

---

[1] The Operating Agreement is incorporated by reference.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

Section 5.5 of the Operating Agreement gives the Members management functions, which means that they therefore owe fiduciary duties. But Section 5.5 provides that "Major Decisions" must be "determined, made, approved or authorized by the consent of Members holding at least 51% of the Percentage Interests." (ECF No. 145-1 at 11.) That provision does not suggest that Silver Strand is a member-managed corporation; rather, it sets forth procedures for making significant decisions for the corporation. The Operating Agreement makes clear that Silver Strand is a manager-managed company. As a result, Dennis, who is only a member and not a manager, owed no fiduciary duty to Plaintiff.

Plaintiff's fiduciary duty claim falls short for two additional reasons. First, Plaintiff does not allege how Dennis's breach of fiduciary duty affected Plaintiff personally as opposed to harming her as a Member of Silver Strand LLC. In the SAC, Plaintiff describes the harm as "not [being] in the best interest of the *Company*." (SAC ¶¶ 315–17) (emphasis added). But as explained in the previous Order, Plaintiff may not bring a derivative claim, which is a suit that "seeks to recover for the benefit of the corporation and its whole body of shareholders when [the] injury is caused to the corporation." *Solarmore Mgmt. Servs., Inc. v. Bankr. Est. of DC Solar Sols.*, No. 2:19-CV-02544-JAM-DB, 2021 WL 3077470, at *3 (E.D. Cal. July 21, 2021). The Members rejected her pre-filing demand to file suit. (*See* ECF No. 111 at 32.) Second, Plaintiff's claims against Dennis and the Members cannot overcome the business judgment rule. "The rule 'has two components—immunization from liability that is codified at Corporations Code Section 309[,] and a judicial policy of deference to the exercise of good-faith business judgment in management decisions.'" *F.D.I.C. v. Van Dellen*, No. CV 10-4915 DSF SHX, 2012 WL 4815159, at *6 (C.D. Cal. Oct. 5, 2012) (citation omitted). "The rule establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest." *Berg & Berg Enterprises, LLC v. Boyle*, 100 Cal. Rptr. 3d 875, 897 (2009). Exceptions to the business judgment rule exist if certain circumstances "raise an inference of conflict of interest" or if the actions were taken "without reasonable inquiry, with

improper motives, or as a result of a conflict of interest." *Id.* If Plaintiff argues that an exception to the business judgment rule applies, then the "plaintiff must allege sufficient facts to establish these exceptions." *Id.* Conclusory allegations do not suffice. *See id.*

Here, Dennis's actions are protected by the business judgment rule. The SAC provides that "at least as of October 2019 but probably before," Dennis was "provided with the evidence by Plaintiff" and "knew all the details of the Manager's Breach of Fiduciary Duty." (SAC ¶ 346.) As explained in the previous Order, Dennis's decision to vote against Plaintiff's proposals was informed and presumptively protected by the business judgment rule. In her Opposition, Plaintiff claims that the Business Judgment Rule does not apply because the Members' decision was "not made in good faith" and that the Members had a "personal interest in the lawsuit's outcome, tormenting [Plaintiff] and financial gain from their mother." (Opp'n at 38.) But as Dennis notes, that is a conclusory allegation. "[M]ore is needed than conclusory allegations of improper motives and conflict of interest. *Berg & Berg Enterprises, LLC*, 100 Cal. Rptr. 3d at 897. Here, Plaintiff has not met her burden and her breach of fiduciary duty claim fails.[2]

### 4. Aiding and Abetting a Breach of Fiduciary Duty

Plaintiff also alleges that Dennis aided and abetted the other members' breach of fiduciary duty. But that claim falls short for the same reasons provided in the previous Order. "To state a claim for aiding and abetting breach of fiduciary duty under California law, a plaintiff must allege that the defendant: (1) had actual knowledge of the specific primary wrong being committed by the fiduciary; and (2) provided substantial assistance to the fiduciary to accomplish the specific breach of fiduciary duty." *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 361 (N.D. Cal. 2015).

---

[2] Dennis raises other grounds to dismiss the breach of fiduciary claim. (ECF No. 198 at 11–12.) Because the other reasons discussed above are sufficient to dismiss Plaintiff's claim, the Court finds no reason to address the other grounds.

As discussed in the previous Order, Plaintiff has not shown that Dennis had "actual knowledge" of the specific wrong at issue. The SAC provides that Dennis knew "all the details of the Manager's Breach of Fiduciary Duty" at least of October 2019 (SAC ¶ 346), but the acts that constituted the breach of fiduciary duty occurred in 2017. (*Id.* ¶¶ 183, 210, 235, 262, 267.) So, by the SAC's own terms, Dennis did not know about Sherman's alleged breach of fiduciary duty until two years after the breach occurred. Moreover, the SAC does not allege facts showing what Dennis did to assist Sherman in breaching her fiduciary duty. As a result, the aiding and abetting claim fails.

### 5. Breach of Covenant of Good Faith and Fair Dealing

Next, Plaintiff claims that Dennis and the rest of the Members breached the covenant of good faith and fair dealing by violating the Operating Agreement. (SAC ¶¶ 331–38.) According to Plaintiff, Dennis and the other Members voted to deny Plaintiff's request for an account of Silver Strand's finances, used Silver Strand to pay their personal bills, failed to provide a "written undertaking," and refused to vote to dissolve Silver Strand. (*Id.* ¶¶ 331, 335, 336, 338.) All these acts, Plaintiff argues, violated the Operating Agreement, and gives rise to this claim.

"In order to establish a breach of the covenant of good faith and fair dealing, a plaintiff must show: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *48 (N.D. Cal. Aug. 30, 2017) (internal quotation marks and citation omitted).

This claim fails for several reasons. First, Section 5.8 of the Operating Agreement provides that no member may be liable for any act or omission that is within the scope of their authority and does not constitute fraud or negligence. (ECF No. 145-1 at 12.) Here, the claims against Dennis stem from her failure to vote in the way that Plaintiff wanted—whether it be to provide an account for Silver Strand's finances, failing to provide a

"written undertaking," or refusing to dissolve Silver Strand.  These were acts that fell within Dennis's discretion as a Member, and Section 5.8 immunizes these acts from liability.  Plaintiff argues that Dennis and the rest of the Members were required to vote for her proposition under the Operating Agreement, but Plaintiff does not identify which provisions obligated the Members to do so.

Second, Plaintiff does not allege how Dennis's actions interfered with a benefit to which she was entitled to under the Operating Agreement.  Plaintiff's allegations that the Members relied on Silver Strand's attorney, or had Silver Strand improperly pay bills, do not show how Dennis interfered with Plaintiff's rights under the Operating Agreement. Without more, Plaintiff's claims fall short.

### 6. Unjust Enrichment

Plaintiff's claim for unjust enrichment fares no better.  Plaintiff argues that each Defendant in this case were unjustly enriched at her expense and "in an amount subject to proof at trial."  (SAC ¶¶ 452, 454.)  But that claim is conclusory.  In the Ninth Circuit, an unjust enrichment claim is construed as a quasi-contract claim seeking restitution.  *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Unjust enrichment claims are not viable when "there exists between the parties a valid express contract covering the same subject matter."  *Andreoli v. Youngevity Int'l, Inc.*, No. 16-CV-02922-BTM-JLB, 2018 WL 1470264, at *8 (S.D. Cal. Mar. 23, 2018) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).  Here, all the claims in the SAC are based on the Operating Agreement, which Plaintiff concedes is a contract. Since the Operating Agreement governs Plaintiff's claims, her unjust enrichment claim fails.  *See id.* ("[Plaintiff] cannot maintain a quasi-contract cause of action based on an already existing contract.").

### 7. Judicial Dissolution

Next, Plaintiff seeks a judicial dissolution of Silver Strand.  (SAC ¶¶ 171–97.) Plaintiff argues that Silver Strand was mismanaged by the current members, and she now

19-CV-605 TWR (AHG)

seeks the "sale of all or substantially all" of Silver Strand's assets and distributions according to the ownership interests held by each shareholder. (*Id.* ¶¶ 174–181, 186.)

The Operating Agreement, however, forecloses this argument. Under Section 8.1, each Member waived "any and all other rights that it may have to cause the dissolution of the Company or a sale or partition of any or all of the Company assets." (ECF No. 145-1 at 12.) Section 8.2 provides that dissolution is proper upon: (1) "the sale of all or substantially all of the Company assets;" and (2) "[t]he written consent of all of the Members." (*Id.*) Neither of those conditions have occurred. Plaintiff claims that Silver Strand's primary asset was sold in January 2017 (SAC ¶ 182) and argues in her Opposition that "[d]issolution was mandatory after sale of Silver Strand Plaza." (Opp'n at 15.) But Plaintiff fails to allege sufficient facts to support those assertions. Instead, Plaintiff seeks the "sale of all or substantially all of the assets of [Silver Strand] and distributions made according to the percentage owned by each shareholder." (SAC ¶ 186.) In other words, by Plaintiff's own admission, the Company has not sold all or substantially all of Silver Strand's assets.[3] Since Plaintiff has no right to dissolve Silver Strand under the terms of the Operating Agreement, her argument for judicial dissolution fails.

### 8. Receiver, Accounting, and Constructive Trust

In the SAC, Plaintiff asserts a cause of action for receiver, accounting, and a constructive trust. (SAC ¶¶ 198–251.) But, as Dennis points out, those are remedies and not causes of action. *See ProElite, Inc. v. Ismail*, No. CV072015GAFVBKX, 2008 WL 11333468, at *13 (C.D. Cal. Aug. 19, 2008) (granting summary judgment on a receiver claim because it is not a viable cause of action in California); *Arango v. Recontrust Co.*, No. 09CV 01754 MMA JMA, 2010 WL 2404652, at *6 (S.D. Cal. June 14, 2010) ("[A]ccounting is a remedy, not a cause of action."); *Arouchian v. Bank of Am., N.A.*, No.

---

[3] Alternatively, Plaintiff may believe that Silver Strand has already sold all or substantially all its assets in January 2017 and is now seeking the sale of what remains of Silver Strand. As currently alleged, however, this remains unclear, even when viewing all facts in the light most favorable to Plaintiff.

EDCV121028PSGDTBX, 2012 WL 12897038, at *3 (C.D. Cal. Oct. 11, 2012) ("[C]onstructive trust is not a cause of action, but a remedy."). Plaintiff concedes this in her Opposition. (Opp'n at 46.) Accordingly, these claims fail.

## B. Kramer – Motion to Dismiss (ECF No. 164)

Like Dennis, Kramer moves to dismiss all the claims asserted against her: (1) fraudulent conveyance, (2) the aiding and abetting a breach of fiduciary duty, (3) judicial dissolution, (4) breach of fiduciary duty, (5) breach of the covenant of good faith and fair dealing, (6) receiver, (7) accounting, (8) constructive trust, and (9) unjust enrichment. The Court addresses each below.

### 1. Fraudulent Conveyance

The claim for fraudulent conveyance stems from the assignment of Kramer's ownership interests in Silver Strand to the L&E Trust. (SAC ¶¶ 145–50.) Plaintiff claims that this conveyance violated the Operating Agreement, which prohibits Members from assigning their interests in Silver Strand subject to certain exceptions. (*Id.* ¶¶ 146–48.) Plaintiff alleges that Kramer made this conveyance after Plaintiff threatened a lawsuit against her in 2014. (*Id.* ¶ 154.)

"A fraudulent conveyance is 'a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim.'" *Beatbox Music Pty, Ltd. v. Labrador Ent., Inc.*, No. CV176108MWFJPRX, 2021 WL 831017, at *2 (C.D. Cal. Jan. 12, 2021) (citation omitted). Here, neither the SAC or Opposition alleges that Plaintiff is a creditor or Kramer is a debtor. Put differently, Plaintiff does not allege that Kramer owes her any money. Further, "Plaintiffs' allegations do not establish that the assignment and transfer put beyond Plaintiffs' reach the property they would otherwise be able to subject to the payment of debt, as required to show that a plaintiff has been damaged by the fraudulent transfer." *Lachapelle v. Kim*, No. 15-CV-02195-JSC, 2015 WL 5461542, at *6 (N.D. Cal. Sept. 16, 2015). The Opposition does not address this. (*See* Opp'n at 30–32.) As a result, the fraudulent conveyance claim does not survive a motion to dismiss.

### 2. Judicial Dissolution, Breach of Fiduciary Duty, Breach of the Covenant of Good Faith and Fair Dealing

In seeking judicial dissolution and asserting claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing, Plaintiff makes the same factual allegations here that she made against Dennis.  For the same reasons discussed above, these claims fail.

### 3. Aiding and Abetting a Breach of Fiduciary Duty

Plaintiff alleges that Kramer aided and abetted a breach of fiduciary duty.   In response, Kramer argues that the SAC fails to allege that she knew about the breaches of fiduciary duty and how she rendered substantial assistance.  (ECF No. 164-1 at 8–9.)  The Court agrees.  Even if a breach of fiduciary duty did occur, and even if Kramer knew about those breaches, Plaintiff fails to allege how Kramer provided substantial assistance.  "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879, 57 Cal. Rptr. 3d 454, 469 (2007) (citation omitted).   At best, Plaintiff alleges that Kramer helped Sherman "over-pay management fees, hire attorneys for [Silver Strand] who also represented several other individuals and entities that had a direct conflict of interest with [Silver Strand]," and "interfere with the contractual relations between Hammett and Kramer and Dennis."  (SAC ¶ 349.)  But Plaintiff does not allege what Kramer did to help Sherman.  As currently alleged, Plaintiff's claims are conclusory.  Accordingly, they do not survive a motion to dismiss.

### 4. Judicial Dissolution, Breach of Fiduciary Duty, Breach of the Covenant of Good Faith and Fair Dealing, Receiver, Accounting, Constructive Trust, or Unjust Enrichment

Plaintiff makes the same factual allegations here that she made against Dennis.  (SAC ¶¶ 171, 198–251, 301, 326, 452.)  As a result, these claims fail for the reasons set forth above.

/ / /

**C. Sherman – Motion to Dismiss (ECF No. 167)**

Like Dennis and Kramer, Sherman moves to dismiss each of the claims asserted against her. The Court addresses each of those claims in sequence.

**1. Fraud**

Plaintiff accuses Sherman of fraud, arguing that she and the other Defendants made various misrepresentations and concealments. (SAC ¶¶ 95–96.) Plaintiff alleges that Sherman misrepresented how much she was getting paid for management fees and how much Silver Strand was charging its tenants for property rent. (SAC ¶¶ 99–101, 121.)

To state a claim for fraud in California, a plaintiff must allege "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (citation omitted). Rule 9(b) applies to fraud-based claims and requires the plaintiff to allege the "who, what, when, where, and how of the misconduct charged." *Id.* at 1106 (internal quotation marks and citation omitted). The plaintiff must show that the defendant "intended to induce the plaintiff to act to his detriment in reliance upon the false representation and that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1069 (E.D. Cal. 2012) (internal quotation marks and citation omitted).

In California, fraud claims are subject to a three-year statute of limitations. Cal. Civ. Proc. Code. § 338(d). "The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id.* "Plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (citation omitted).

The fraud claim here is time-barred. Plaintiff filed this lawsuit on April 2, 2019, but the SAC provides that Plaintiff first suspected Sherman was "not making reasonable distributions" in 2014. (SAC ¶ 214.) All the other actions appear to have taken place in

2014 or 2015.  (*Id.* ¶¶ 99–100, 103, 105, 107, 114–17.)  To be sure, Plaintiff alleges that she was "fraudulently induced to agree to a bottom sales price of $7.9 million for the property in 2016 based on the numbers she was given by the Manager and Stern."  (*Id.* ¶ 130.)  But Plaintiff does not specify *when* this event took place in 2016.  Because this lawsuit was filed on April 2, 2019, this event needs to have occurred before April 2, 2016, to be timely.  Since Plaintiff does not provide a specific date, it is unclear whether the fraud claim survives.[4]

In response, Plaintiff claims that the delayed discovery exception applies.  (Opp'n at 28.)  It does not.  "[U]nder the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 917 (2005).  As suggested above, to assert the delayed discovery exception, a plaintiff must "specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1141 (C.D. Cal. 2010) (citation omitted).  Here, Plaintiff has not done so.  She has not alleged "how and when she [] actually discover[ed] the fraud or mistake."  *Id.* at 1143.  At best, Plaintiff points to several paragraphs in the SAC, claiming that she "did not discover the fraud until after the sale in 2017" and listing the fraudulent statements that Sherman and the other Defendants made about the "overpayment of management fees" and the rents they were charging the tenants.  (Opp'n at 28.)  But none of that shows "the manner of her discovery."  *See Yumul*, 733 F.2d at 1143.  As a result, Plaintiff has not sufficiently alleged that the delayed discovery rule applies.

---

[4] For this reason, leave to amend is warranted.  As Sherman notes, Plaintiff makes some "vague references to later dates."  (ECF No. 167-1 at 9.)  Because the SAC does not specify when the fraudulent acts occurred, it leaves room for some actions to have occurred within the limitations period.  The Court finds it premature to deny leave to amend at this juncture.

Still, even if the fraud claim was timely, it falls short—namely because Plaintiff does not allege how she was harmed by the fraudulent statements.  In the SAC, Plaintiff claims that she "justifiably relied on the misinformation from the Fraud Defendants and was damaged by that reliance."  (SAC ¶ 98.)  In her Opposition, she adds "it is hard to gauge the exact numbers without access to the company books and records," and that "some of the harm was emotional."  (Opp'n at 30.)  Both claims are too vague to survive a motion to dismiss.  "Although Plaintiff need not allege the exact amount of damages, Plaintiff must allege what detriment [s]he suffered as a result of the alleged misrepresentations."[5] *Bobulinski v. Roseman*, No. CV 19-2963-MWF (SSX), 2019 WL 4452958, at *5 (C.D. Cal. June 26, 2019).  Since the "[t]he absence of any one of these required elements will preclude recovery," *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1069 (E.D. Cal. 2012), the fraud claim fails.[6]

### 2. Fraudulent Conveyance

The claim for fraudulent conveyance stems from Linda Kramer's assignment of her interests to her trust, the L&E Trust.  (SAC ¶¶ 14, 150.)  According to Plaintiff, this assignment violated the Operating Agreement and was "void ab initio."  (*Id.* ¶¶ 145–50.)  As the Manager, Sherman proceeded to make distributions to the L&E Trust, which allegedly violated the Operating Agreement.  (*Id.* ¶ 151.)

Here, Plaintiff fails to make any relevant claim against Sherman.  The only person who "conveyed" anything was Kramer.  While Plaintiff alleges that Sherman made distributions to the L&E Trust, that was not the act underlying the fraudulent conveyance.  Plaintiff concedes as much.  (Opp'n at 31.)   Accordingly, the claim for fraudulent conveyance against Sherman fails.

---

[5] To be sure, "under California law, a fraud claim cannot rest solely on emotional distress damages." *De la Cerra Frances v. de Anda*, 224 F. App'x 637, 638 (9th Cir. 2007) (citation omitted).

[6] Sherman also argues that the fraud claim should be dismissed because her statements were opinions, which cannot form the basis for fraud.  (ECF No. 167-1 at 9.)  The Court need not analyze this issue because the statute of limitations and lack of damages are enough to dismiss this claim.

### 3.  Dissolution of Silver Strand

The request to dissolve Silver Strand fails for the same reasons provided above.  This claim does not survive a motion to dismiss.

### 4.  Conversion

Plaintiff's conversion claim also fails.  To state a claim for conversion, the plaintiff must allege "ownership or right to possession of property, wrongful disposition of the property right and damages."  *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  Here, Plaintiff alleges that Sherman was obligated to pay Plaintiff her fair share after Silver Strand Plaza was sold but failed to do so.  (SAC ¶¶ 254–55.)  Instead, Sherman withheld the money and used it as a litigation fund in case Plaintiff sued her or Silver Strand.  (*Id.* ¶ 268.)  Plaintiff concedes that she was eventually paid the first portion of her distribution ten days after those funds were available to Silver Strand. (*Id.* ¶ 273.)

Plaintiff's conversion claim is inadequate for several reasons.  First, to state a conversion claim, there must be "substantial interference with possession of the property or the right to it."  *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 618 (N.D. Cal. 2007); *see also Addeo v. Union Oil Co. of California*, 8 F. App'x 682, 683 (9th Cir. 2001) (affirming summary judgment on a conversion claim because there did not exist a genuine issue on whether there was "a substantial interference with his property or his rights to it.").  Here, Plaintiff alleges that her payment was delayed ten days but does not allege how or why this constitutes substantial interference.  In her Opposition, she cites allegations that she made in support of "Dissolution," but those claims fail to address the question of substantial interference.  (*See* Opp'n at 17, 32–33.)  Second, and as explained

1  in the previous Order, even if conversion did occur, that claim belongs to the LLC and not

2  Plaintiff.  (*See* ECF No. 111 at 36–37.)  As a result, the conversion claim fails.[7]

3       **5.  Breach of Fiduciary Duty**

4       Plaintiff lists several actions that give rise to a breach of fiduciary duty.  First, she

5  claims that Mary E. Sherman, as Manager, owed a duty based on: (1) her position as

6  manager of Silver Strand; (2) the relationship she had with Plaintiff; and (3) the "trust and

7  confidence" that Sherman had in her.  (SAC ¶ 286, 289.)  Further, Plaintiff claims, Sherman

8  owed her a duty under Cal. Corp. Code § 17704.09.  (*Id.* ¶ 290.)  According to Plaintiff,

9  Sherman breached this duty by, among other things, concealing material facts from

10 Plaintiff, failing to provide "true and correct financial records of the Company," and failing

11 to notify Plaintiff that the rents reported on Silver Strand's property were far below market

12 rate.  (*Id.* ¶¶ 286–87.)

13      All the allegations against Sherman were fully addressed in the previous Order and

14 dismissed.  The Court explained that Plaintiff's breach of fiduciary claim was "derivative

15 in nature" (ECF No. 111 at 36), and that the harm caused by the breach was to Silver Strand

16 and not to Plaintiff as an individual.  *See Eurolog Packing Grp., N. Am., LLC v. EPG*

17 *Indus., LLC*, No. LACV1802982VAPJEMX, 2019 WL 1873295, at *3 (C.D. Cal. Feb. 14,

18 2019) ("[A]n action against an LLC "is derivative, i.e., in the corporate right, if the

19 gravamen of the complaint is injury to the corporation.").  The Court dismissed the

20 derivative suit because Plaintiff had "fail[ed] to allege any facts to rebut the presumption

21 that the vote to reject a derivative suit is protected by the business judgment rule."  (*Id.*)

22 The same reasoning applies here.  Plaintiff claims that the business judgment rule does not

23 apply because Sherman's actions were not in good faith and fair dealing (SAC ¶ 297), but

24

25

26

27 [7] Sherman also asserts other grounds to dismiss the conversion claim.  (ECF No. 145-1 at 10.)  Because

28 the two grounds mentioned above are sufficient to dismiss the conversion claim, the Court need not
   consider those arguments.

the Court has already found otherwise based on the same facts.  Since Plaintiff adds no new claims against Sherman, her claim for breach of fiduciary duty fails.

In addition, Plaintiff asserts a separate cause of action against all member Defendants, including Jeffrey M. Sherman, who is Plaintiff's brother-in-law and Mary E. Sherman's husband.  (SAC ¶ 301.)  But those claims fare no better.  First, the SAC does not allege what Jeffrey Sherman did.  Second, Plaintiff makes the same allegations discussed above (*see* SAC ¶ 304), which suggests Plaintiff is asserting a derivative suit that she cannot assert because she fails to overcome the business judgment rule.  As Sherman notes, Plaintiff conceded as much when she said that these actions were "not in the best interest of the *Company*."  (SAC ¶¶ 310, 315–17) (emphasis added).  For the same reasons discussed above, this claim fails.

### 6. Breach of the Covenant of Good Faith and Fair Dealing

In asserting a claim for breach of the covenant of good faith and fair dealing, Plaintiff makes the same allegations here that she made against Dennis.  In short, this claim arises from the fact that the Members: (1) voted to deny Plaintiff's request for an account of Silver Strand's finances; (2) used Silver Strand to pay their personal bills; (3) failed to provide a "written undertaking;" and (4) refused to vote to dissolve Silver Strand.  (*Id.* ¶¶ 331, 335, 336, 338.)  All these acts, Plaintiff argues, violated the Operating Agreement, and gives rise to this breach claim.

But this claim fails for the same reasons already discussed.  First, the fact that the Members voted to deny a request for an accounting of Silver Strand's finances, failed to provide a "written undertaking," and refused to dissolve Silver Strand are not breaches of the covenant of good faith and fair dealing.  Rather, and as explained above, those actions are covered by the business judgment rule, and Plaintiff does not allege facts showing that an exception to that rule applies.  Plaintiff argues in conclusory fashion that the Members' decisions were "not made in good faith" and that the Members had a "personal interest in the lawsuit's outcome, tormenting [Plaintiff] and financial gain from their mother."  (Opp'n at 38.)  But without factual support, those claims do not survive a motion to dismiss.

Second, Plaintiff does not allege how any of the Members' acts interfered with her right to receive a benefit under the Operating Agreement.  Plus, even if they did, those harms would be directed against Silver Strand, not Plaintiff.  And what is more, Section 5.8 of the Operating Agreement provides that "[n]o Member or Manager shall be liable to any other Member or Manager because of any act or failure to act if such act or omission is within the scope of authority . . . and does not constitute fraud or negligence."  (ECF No. 145-1 at 9.)  Although Plaintiff claims that Sherman and the rest of the Members voted "in contravention to the [Operating Agreement]," (Opp'n at 19), Plaintiff does not identify which provisions obligated the Members to vote for her proposals.  Without those facts, the business judgment rule protects the Members' actions.  As a result, this claim against Sherman fails.

### 7.  Aiding and Abetting a Breach of Fiduciary Duty

In asserting a claim for the aiding and abetting a breach of fiduciary duty, Plaintiff makes the same allegations here that she made against Dennis.  Namely, Plaintiff argues that the J&M Trust Defendants, along with several others, had a "duty to vote against the commission of acts in contravention to the [Operating Agreement] but refused to do so." (SAC ¶ 349.)  Further, Plaintiff claims the Defendants also helped the Manager overpay management fees and hire attorneys who had a conflict of interest.  (*Id.*)

As explained in the previous Order, however, Plaintiff's claim fails.  Without an actual breach of fiduciary duty, Plaintiff has no claim for the aiding and abetting of a breach of fiduciary duty.  *See Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST ANX, 2012 WL 7071488, at *7 (C.D. Cal. Dec. 26, 2012) ("Without a principal who has breached a fiduciary duty, Plaintiffs have failed to allege a claim for aiding and abetting a breach of fiduciary duty.").  This claim does not survive a motion to dismiss.

### 8.  Defamation Per Se, or Alternatively, Defamation Per Quod

Plaintiff's defamation claim is based on an email that Sherman wrote to Roberta Kramer, Dennis, and Linda Kramer, which said that Silver Strand should not be "bullied" by Plaintiff, whom she called an ungrateful creature, and accused Plaintiff of having broken

the law repeatedly.  (SAC ¶ 395.)  Plaintiff argues that these statements were either false or misleading and that Sherman "acted with malice" and "failed to use reasonable care to determine the truth or falsity" of that statement.   (*Id.* ¶¶ 376, 378.)  As a result of the defamatory statement, Plaintiff suffered actual damages.  (*Id.* ¶¶ 384, 388.)

To begin, the claim for defamation per se fails for the same reason provided in the previous Order: Arkansas does not recognize defamation per se as a viable cause of action. (ECF No. 111 at 18–21.)  Further, and as already explained, the Court finds no reason to revisit whether Arkansas law applies to this claim.

The claim for defamation per quod fares no better.  In Arkansas, a plaintiff asserting a defamation claim must "prove reputational injury in order to recover damages."  *United Ins. Co. of Am. v. Murphy*, 331 Ark. 364, 370, 961 S.W.2d 752, 756 (1998).  And here, Plaintiff has not done so.  (*See* SAC ¶¶ 384–86.)  She alleges in conclusory terms that there was "actual damage to Plaintiff's reputation."  (*Id.* ¶¶ 384, 386.)  But as the Court noted in its previous Order, "Plaintiff has not pled specific facts demonstrating that she has suffered actual damage to her reputation, but has only pled a conclusion to that effect, which is not enough to withstand a ... motion to dismiss."  (ECF No. 111 at 22) (internal quotation marks and citation omitted).  The same is true here.  As a result, this claim does not survive a motion to dismiss.

### 9. False Light Invasion of Privacy

The claim for false light invasion of privacy is based on the same email that gives rise to her defamation claim.  (SAC ¶ 395.)  Here, Sherman wrote that Plaintiff was fired from her job at the County, had a $250,000 judgment imposed against her, and she had not paid taxes in California since 2011.  (*Id.*)  This email caused Plaintiff emotional distress and has led her to see a psychiatrist and resume therapy.  (*Id.* ¶ 408.)

Plaintiff's claim against Sherman suffers from the same deficiency as her claim against Dennis.  That is, Plaintiff fails to allege that the email was "published to the public at large, as is required for such a claim."  *Parkhurst v. Tabor*, No. CIV. 07-2068, 2008 WL 2323928, at *2 (W.D. Ark. June 2, 2008).  As a result, this claim fails.

### 10. Unjust Enrichment

The unjust enrichment claim fails for the same reasons discussed above.

## D. Silver Strand – Motion to Dismiss (ECF No. 167)

Finally, Plaintiff asserts several causes of action against Silver Strand, but each of those fail for the same reason discussed in the previous Order:  Plaintiff may not bring a direct suit against Silver Strand.  "The principles of derivative lawsuits applicable to corporations likewise apply to a limited liability company." *PacLink Commc'ns Int'l, Inc. v. Superior Ct.*, 90 Cal. App. 4th 958, 963, 109 Cal. Rptr. 2d 436, 439 (2001).  "In determining whether a claim is derivative or direct, a court should look to the nature of the wrong and to whom the relief should go."  *Zachman v. Wells Fargo N.A.*, No. 315CV02909BENJMA, 2017 WL 3314229, at *3 (S.D. Cal. Aug. 1, 2017) (internal quotation marks and alteration omitted).  "A direct action by a shareholder or member is a suit to enforce a right which the shareholder or member possesses as an individual." *Solarmore Mgmt. Servs., Inc. v. Bankr. Est. of DC Solar Sols.*, No. 2:19-CV-02544-JAM-DB, 2021 WL 3077470, at *3 (E.D. Cal. July 21, 2021).  "A derivative suit on the other hand, 'seeks to recover for the benefit of the corporation and its whole body of shareholders when [the] injury is caused to the corporation.'"  *Id.* (alterations in original).

Here, Plaintiff seeks a direct suit, which she has no authority to assert.[8]  Plaintiff claims that she seeks "distributions that should have been made" but were "withheld unjustly and without her consent." (SAC ¶ 58; *see* Opp'n at 25.)  But that is not a personal, individualized harm.  Rather, this harm flows from her status as a Member of Silver Strand LLC, which in turn cannot sustain a direct suit.  *See Solarmore Mgmt. Servs., Inc.*, 2021 WL 3077470, at *3.  Further, the Court noted in its previous Order that "Plaintiff has no

---

[8] Plaintiff acknowledges that she is not asserting a derivative suit.  (Opp'n at 23–24.)  So, the Court need not consider any argument to that effect.  But even if she were, that claim would fail for the same reason discussed in the previous Order: The other Members rejected Plaintiff's pre-filing demand, and that decision was protected by the business judgment rule.  (ECF No. 111 at 32–33.)  Further, as discussed above, Plaintiff has not established that an exception to the business judgment rule applies.

ownership interest in the profits of [Defendant SSP] and cannot have been deprived of them." (ECF No. 111 at 29–30) (citation omitted).  As a result, Plaintiff's attempt to bring a direct suit fails.

In response, Plaintiff cites *Jones v. H. F. Ahmanson & Co.*, 460 P.2d 464, 470 (1969) and argues that she can bring a direct action as a minority shareholder.  (Opp'n at 25.)  A minority shareholder can bring suit against the majority stockholders for breach of fiduciary duty if the injury is "not incidental to an injury to the corporation."  *PacLink Commc'ns Int'l, Inc. v. Superior Ct.*, 90 Cal. App. 4th 958, 964, 109 Cal. Rptr. 2d 436, 440 (2001) (citation omitted).  Relying on *Jones*, Plaintiff claims that "[m]ajority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority."  *Id.* at 471.  That argument, however, was considered and rejected in the previous Order due to Plaintiff's failure to allege "an injury separate from that suffered by Defendant [Silver Strand]" and whether "its Members . . .  acted as a majority to deprive Plaintiff—and Plaintiff alone—of her fair share in Defendant [Silver Strand]."  (ECF No. 111 at 31.)  The same remains true here.  First, Plaintiff has not alleged an individualized, personalized harm.  As Silver Strand notes, Plaintiff calculates her damages based on "Plaintiff's share of the capital and net profits from the Company" (SAC ¶ 241) and argues that her lawsuit is necessary to protect "funds or other asset of [Silver Strand]."  (SAC ¶ 250.)  This shows that this is not an individualized, personal harm.  And although Plaintiff claims that "dissolution is always a direct injury," (Opp'n at 20), and that the "lack of dissolution is detrimental to [Plaintiff] directly," (*id.* at 25), Plaintiff does not explain how.  Further, the Operating Agreement provides that Silver Strand can only be dissolved based on: (1) "[t]he sale of all or substantially all of the Company's assets"; or (2) "[t]he written consent of all of the Members."  (ECF No. 145-1 at 12–13.)  While Plaintiff alleges that Silver Strand's "primary asset was solid in January 2017," (SAC ¶ 182), she still seeks "the sale of all or substantially all of the assets of Silver Strand" (*see id.* ¶¶ 186, 211), and she does not allege that all the other Members have provided their

written consent.  Since neither of the two conditions appears to have taken place, Plaintiff does not have the right to dissolve Silver Strand.

In addition, Plaintiff claims that she has suffered a personal injury based on the Members' breach of fiduciary duties and a breach of the Operating Agreement.  (Opp'n at 27.)  But this suit is against Silver Strand, not the individual Members.  Plaintiff fails to establish the connection between the breaches by the other Members and Silver Strand's liability.  (*See* ECF No. 200 at 3.)  Further, and as explained above, in a manager-managed LLC like Silver Strand, the Members do not owe a fiduciary duty to other Members, *see* Cal. Corp. Code § 17704.09(e)(3) ("Except as otherwise provided, a member does not have any fiduciary duty to the limited liability company or to any other member solely by reason of being a member"), and a breach of fiduciary duty against Sherman as the Manager does not support a claim against Silver Strand.  *See Eurolog Packing Grp., N. Am., LLC v. EPG Indus., LLC*, No. LACV1802982VAPJEMX, 2019 WL 1873295, at *3 (C.D. Cal. Feb. 14, 2019) (rejecting the argument that a claim is direct because a member of an LLC can "sue a manager for breach of fiduciary duty.").  Lastly, the argument that Silver Strand breached its fiduciary is not viable as a matter of law.  Plaintiff does not provide legal support for the claim that an LLC owes a fiduciary duty to its members.  Rather, in a manager-managed LLC, the manager has a duty of loyalty and care to the LLC and its members.  As a result, this claim fails.[9]

**E.  Motion to Clarify Order (ECF No. 215)**

Finally, Plaintiff argues that the Ninth Circuit has misconstrued a motion that she had filed and asks this Court to clarify the meaning of the Ninth Circuit's Order.  (ECF No. 215.)  This Court has no power to do so.  "Lower courts are bound to execute the terms of

---

[9] The parties dispute whether Plaintiff is a minority shareholder. In her Opposition, Plaintiff claims that Sherman controls 50 percent of the shares and the other Members control 86 percent, collectively.  (*See* Opp'n at 26.)  But as explained in the previous Order, even if that were true, Plaintiff has not alleged how the Members acted in concert to deprive Plaintiff *alone* of her fair share in Silver Strand.  (ECF No. 111 at 31.)  Thus, this argument makes no difference.

the Ninth Circuit's mandate. In other words, the district court must follow the appellate ruling." *Willis v. City of Fresno*, No. 1:09-CV-01766-BAM, 2013 WL 5179515, at *3 (E.D. Cal. Sept. 13, 2013) (citing *U.S. v. Carpenter,* 526 F.3d 1237, 1240 (9th Cir. 2008)). "The rule of mandate requires a lower court to act on the mandate of an appellate court, without variance or examination, only execution." *United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006).  Accordingly, this motion is **DENIED**.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' motions to dismiss.  (ECF Nos. 162, 164, 166, 167.)  Given that this is Plaintiff's Second Amended Complaint, the Court finds that leave to amend is appropriate, especially given that she is proceeding pro se.  Plaintiff will have thirty days (30) from the date of this Order to file an amended complaint.

**IT IS SO ORDERED.**

Dated:  October 7, 2021

_____

Honorable Todd W. Robinson
United States District Judge